LEWIS M. HOPKINS, Administrator, etc., Respondent, *v.* CHARLES A. WOLLEY et al., Appellants.

S., being the owner of 361 acres of land, upon which were certain incumbrances, conveyed them to W., subject to the incumbrances. W. reconveyed 180 acres of said land to S., no mention being made, in the deed, of the incumbrances. In an action to foreclose the lien of one of the incumbrances, *held*, that in the absence of any circumstances showing a contrary intent, the reconveyance constituted the lands remaining in the hands of W., the primary fund for the payment of the incumbrances; and that S. was entitled to the benefit of the rule requiring the lands to be sold in the inverse order of alienation ; also that this equity was not affected by the fact that S. was, and W. was not, personally liable for the incumbrances; and that the equity followed the lands in the hands of all subsequent holders deriving title through S., unless by some special agreement it was relinquished.

Subsequent to said conveyances, and while S. owned the land deeded to him, an agreement was made between the father of the wife of S., W., S., and the wife of the latter, that W. should sell and convey to the former, forty acres, a portion of the remaining land, and should apply the purchase-money in payment of one of the incumbrances, and that the grantee should devise the land so purchased to Mrs. S., which arrangement was carried out. *Held*, that the assent of S. to this arrangement was not a waiver of his equity, at least so far as the forty acres were concerned ; that these facts disclosed the intent to be, that as between the forty acres and the residue of the lands retained by W., such residue should be the primary fund for the payment of the incumbrances remaining unpaid.

S. and wife subsequently conveyed the 180 acres to J. C. W., who executed a mortgage thereon to B.; and on the same day conveyed them to Mrs. S., subject to the mortgage and to the incumbrances in question. Upon foreclosure of said mortgage defendant C. A. W. became the purchaser. *Held*, that assuming that Mrs. S., by accepting the deed, assented, as between her and W. and his grantees, to the incumbrances being charged primarily upon the 180 acres, she could not affect the rights of parties claiming under the mortgage ; and that C. A. W. acquired, by his purchase, all the equities of the mortgagor as they existed at the time of the execution of the mortgage.

The mortgage to B. was nominally for $4,000; it was given to secure him
from liability for any indorsements made by him for S.; he assigned the
mortgage to J. At that time all the paper indorsed by B. had been paid.
J., with the knowledge and assent of S. and his wife, assigned the mort-
gage to W. for $4,000. It was claimed that the mortgage had no vitality
until it was assigned to W., and as prior to that Mrs. S , by accepting the
deed subject to the incumbrances, had charged the 180 acres therewith,
this became binding upon the purchaser under the mortgage. *Held*, unten-
able; that as Mrs. S. took her conveyance expressly subject to the mort-
gage, whether it was valid or not, as between the parties to it, she could
not dispute its validity, and took only such interest as remained over and
above the mortgage, and only that interest could she bind by any
assumption or charge; that the decree of foreclosure established that the
mortgage was a valid lien, and the purchaser on foreclosure sale obtained
a title paramount to hers or that of any one claiming under her, and was
not affected by the conveyance to her.

(Argued February 24, 1880; decided June 1, 1880.)

APPEAL from order of General Term of the Supreme Court,
in the third judicial department, affirming order of Special
Term denying a motion to confirm the referee's report of sale
herein and ordering a resale in a different order.

This was an action to foreclose the lien of a legacy given by
the will of Ira Staples, deceased, to plaintiff's intestate and
charged upon his real estate which was devised to the testator's
two sons, Samuel and David S. Staples. The land devised
contained about 361 acres; the devisees entered into possession
about 1833, and in 1837 David S. Staples conveyed all his
interest therein to Samuel Staples, who assumed the payment of
the legacy. In 1842, Samuel Staples and wife conveyed said
lands to William D. Wolley, " subject to incumbrances thereon
of about $4,500; the legacy in question and other legacies
given by the will were among the incumbrances making up
that sum. In February, 1845, said Wolley reconveyed 180
acres of said lands to Staples. In March, 1845, Wolley con-
veyed forty acres of the residue of the lands to Abraham
Wolley, and in April, 1857, he conveyed six acres to David S.
Staples; the facts and circumstances attending these conveyances
and the further facts appear sufficiently in the opinion. The

question presented related to these three parcels only, the remainder of the original tract not being included in the action. The referee sold in the inverse order of alienation; *i. e.*, first, the six acres, then the forty acres; these two parcels sold for sufficient to satisfy the judgment, and the 180 acres were not sold. The Special Term directed a resale and that the 180 acres be sold first.

*Walter C. Anthony* for the appellants. Although Staples, up to and at the time he conveyed to Wolley, was undoubtedly personally liable for these legacies, Wolley by taking a conveyance subject to the legacies, and by deducting the amount of the legacies from the price of the farm, made the land, both in law and equity, the primary fund for their payment. (*Belmont* v. *Coman*, 22 N. Y. 438; *Jumel* v. *Jumel*, 7 Paige, 591; *Halsey* v. *Reed*, 9 id. 446; *Clowes* v. *Dickinson*, 4 Johns. Ch. 241; *Livingston* v. *Freeland*, 3 Barb. Ch. 510.)

*Samuel Hand* for the respondent. The doctrine of sale of mortgaged premises in the inverse order of alienation being an equitable one, is not inflexible but should be applied in harmony with the equities of each case. (Willard's Equity, 455; *Guion* v. *Knapp*, 6 Paige, 42; *Steere* v. *Childs*, 15 Hun, 511.) The equities applicable to the present case required the sale of 180 acres, before the forty acres should be touched. (*Woods* v. *Spaulding*, 45 Barb. 602; *King* v. *Whitley*, 10 Paige, 465; Willard's Equity, 454, and cases there cited; *Skeel* v. *Spraker*, 8 Paige, 182; *Guion* v. *Knapp*, 6 id. 42.) This case has no analogy to those where the mortgagor has conveyed a part of the land to a grantee, who, in consideration thereof, covenants to pay the mortgage, and the grantee subsequently conveys back a part with warranty. (*Livingston* v. *Freeland*, 3 Barb. Ch. 510; *Russell* v. *Pistor*, 3 Seld. 171.)

RAPALLO, J. This case appears to have been very carefully examined at General Term, where an elaborate opinion was given by BOCKES, J. On the first point discussed in the opin-

ion we deem it unnecessary to say more than that we concur with the learned judge in holding that, in the absence of any circumstance showing a contrary intent, the reconveyance by William D. Wolley to Samuel Staples of 180 acres, out of the larger tract, said to contain 361 acres, which Wolley had previously conveyed to Staples, constituted the land remaining in the hands of Wolley the primary fund for the payment of the incumbrances, subject to which the entire tract had been conveyed by Staples to Woolley. That the facts that Staples was personally liable for these incumbrances to the persons in whose favor they existed, and that Wolley was not so liable, did not affect this equity between him and Wolley and his subsequent grantees, but that as to the 180 acres Staples was entitled to the benefit of the rule that the lands should be sold in the inverse order of their alienation, to the same extent as if he had had no previous connection with the lands. We also concur with the learned judge in holding that this equity followed the lands in the hands of all subsequent holders thereof deriving title through him, unless by some special agreement the equity was relinquished. It necessarily follows that unless such an agreement was established the sale was correctly made by the referee, and his report should have been confirmed. The question which we deem controlling in the case, and upon which we are not able to agree with the General Term, is whether the case contains proof of any agreement or act of Samuel Staples or his grantees which should deprive them of the benefit of the general rule of equity.

The only evidence upon this point consists of the findings of the referee in an action between William D. Wolley, plaintiff, and Elizabeth W. Staples and Georgiana Yawger, defendants, for the foreclosure of three mortgages, under one of which the 180 acres in question were, in the same action, decreed to be sold, and were purchased by the appellant Charles A. Wolley. It is denied by the appellant that these findings are competent evidence against him in this controversy, as to any matter not relating to the mortgage under which the sale was made, but without considering that question we have examined the find-

ings with the view of ascertaining whether, if competent evidence, they establish any state of facts which requires that the ordinary rule as to the order of sale should not be applied.

These findings show that the whole tract of 361 acres was on the 21st of November, 1842, conveyed by Samuel Staples and Elizabeth, his wife, to William D. Wolley for $5,300, subject to incumbrances to the amount of about $4,500. It may be gathered from the statements in the points of the respective parties on this appeal, though it does not appear in any other manner, that the incumbrances, for the collection of which this action was brought, were embraced in this $4,500, and consisted of legacies made in the will of the father of Samuel Staples, and charged upon his lands. The residue of the $4,500 of incumbrances consisted of a mortgage made by Samuel Staples to David S. Staples, which has since been paid.

It was proved in this case that on the 1st of February, 1845, William D. Wolley reconveyed to Samuel Staples 180 acres out of the 361. It does not appear that in this conveyance any mention was made of incumbrances, and, as before said, we agree with the General Term in holding that the effect of this conveyance was to leave the 181 acres remaining in the hands of Wm. D. Wolley unconveyed, primarily chargeable with the incumbrances.

Returning to the findings referred to, it appears from them that afterward, on the 5th of March, 1845, Abraham Wolley (who was the father of William D. Wolley and of Elizabeth Staples, wife of Samuel Staples) contemplated making a testamentary disposition of his property and providing for his children, and it was then agreed between him and William D. Wolley and Elizabeth Staples and Samuel Staples, her husband, that William D. Wolley should convey forty acres of the before-mentioned remaining land to Abraham Wolley for $1,500, and should apply that sum toward the payment of the before-mentioned mortgage to David S. Staples, and that Abraham Wolley should devise the said forty acres of land to Mrs. Staples. This arrangement was carried out; the forty acres of land were conveyed by W. D. Wolley to Abraham

Wolley March 5, 1845, and were by him devised, as agreed, to Mrs. Staples for life. with remainder to her children, and the testator died August 1, 1848.

At the time of entering into this agreement Samuel Staples was still the owner of the 180 acres previously conveyed to him by W. D. Wolley as before stated, and it is his (Staples') assent to the arrangement, which is held by the General Term to be a waiver of his equity as first alienee, to have his lands last sold, at least so far as the forty-acre lot is concerned, for it is said that the forty acres were by that arrangement appropriated to a special purpose, inconsistent with the idea that they were to stand as a primary fund for the payment of the legacies, in preference to the 180 acres then owned by Samuel Staples.

The fact that the entire proceeds of the forty-acre lot were agreed to be applied by William D. Wolley toward the extinguishment of the incumbrances, shows very clearly that all parties regarded the 181 acres retained by Wolley on his conveyance of 180 acres to Staples, as the primary fund for the payment of the incumbrances. It also shows that as between the forty acres so conveyed and the 141 acres presumably retained by W. D. Wolley, for there is no evidence of any conveyance thereof by him, the 141 acres should be the primary fund for the payment of the amount left unpaid of the incumbrances. But it is difficult to spell out of the arrangement an agreement on the part of Samuel Staples that his position in regard to his 180 acres should be changed, and that, even in respect to the forty acres to be devised to his wife, his 180 acres should be primarily chargeable. It is more reasonable to suppose that the 141 acres still left undisposed of by W. D. Wolley were regarded by all parties as an ample fund for the protection of the forty as well as the 180 acres, against the amount remaining unpaid, and that no change in the position of Samuel Staples in regard to the 180 acres was contemplated, or entered into the transaction. The arrangement by which the amount of the incumbrances was to be reduced by William D. Wolley selling a portion of his own land to his father, and

that land was to be given by the father to Mrs. Staples and her children, did not of itself have the effect to change the equities of Samuel Staples in regard to his own land, nor was his assent to the arrangement inconsistent with his retention of them. If it had been intended that he should assume any portion of the remainder of the incumbrances or constitute his land a primary fund for the payment thereof, an agreement to that effect should have been made, though it is difficult to see what legal consideration there would have been for his making such an agreement. Abraham D. Wolley did no more than it was his duty to do in applying the proceeds of sale of his own land to the incumbrances chargeable primarily thereon, and the gift of Abraham Wolley to his daughter was intended as a voluntary testamentary disposition.

It further appears, from the findings referred to, that after the conveyance of the forty acres, in March, 1845, William D. Wolley, in 1850, conveyed fifteen acres to one Baxter, and in 1857 conveyed six acres to David S. Staples. What became of the residue, viz., 120 acres, of the 181 acres originally retained by William D. Wolley, does not appear. The legal presumption is, that W. D. Wolley still retains them, and that they consequently constitute the primary fund and should be first sold. But, as far as we can gather from the papers, neither they nor the fifteen acres conveyed to Baxter were proceeded against in this action, the owners of the fifteen acres not being parties as is stated in the case. Neither the complaint nor the judgment are printed in the case, and for some of the material facts we are obliged to rely upon the statements in the points of the respective parties.

Assuming, as we must, that with the acquiescence of all parties, the fifteen acres and the 120 acres are, for some reason not disclosed, left out of the controversy, and that all that is submitted to us is the order of sale as between the forty acres and the 180 acres, we conclude that the facts stated in the before mentioned findings relating to the conveyance of the forty acres to Abraham Wolley are not sufficient to change the order of priority of sale as between those two parcels.

It is contended, however, that by subsequent dealings in relation to the 180 acres the burden of the incumbrances was primarily cast upon them.

It appears that on the 11th of January, 1849, Samuel Staples and wife conveyed the 180 acres to John C. Wolley, who, on the 18th of March, 1850, mortgaged them to Simeon Bradley for $4,000, and on the same day, by quit-claim deed, in consideration of one dollar, conveyed them, subject to that mortgage, to Mrs. Elizabeth Staples, wife of Samuel Staples. That quit-claim deed declares that the premises conveyed are subject to said mortgage, and also to the payment of certain legacies charged upon them by the will of Ira Staples, deceased, and all incumbrances, privileges and liens, created by said will and thereby charged upon said land.

It is claimed that, by accepting this deed, Elizabeth Staples assented to the incumbrances being primarily charged upon the 180 acres conveyed to her, as between her and William D. Wolley and his grantees.

Assuming this to be the case, Elizabeth Staples could charge only her interest in the land. This interest was subject to the Bradley mortgage for $4,000, and no assumption by her could affect the rights of parties claiming under that mortgage. The present appellant claims under that mortgage, being the purchaser at the sale for its foreclosure. He acquired, therefore, all the equities of the mortgagor as they existed at the time of the execution of the mortgage, and the assumption by the subsequent grantor of the equity of redemption cannot affect him, unless the facts next referred to change his status.

The findings state that the $4,000 mortgage was given to Bradley as security for such notes as he might become liable to pay as indorser for Samuel Staples, and was held by Bradley for that purpose until it was assigned by him to John C. Wolley on the 25th of December, 1850, and that, at that time, all the notes for which Bradley held the mortgage had been paid by Staples. That John C. Wolley held the mortgage until April 2, 1856, when he assigned it to William D. Wolley in consideration of $4,000. That this assignment was made

with the knowledge and consent of Elizabeth W. Staples and Samuel Staples, and the interest thereon was paid up to April 1, 1856, and afterward the interest thereon was paid up to October, 1860.

Upon these facts it is claimed that the mortgage had no vitality until it was assigned, in 1856, to William D. Wolley, and the conclusion is drawn that the intermediate alleged charging of the 180 acres with the incumbrances in question by Elizabeth Staples accepting a deed declaring them subject to such incumbrances, became binding upon the purchaser under that mortgage. I cannot so understand the transactions. Elizabeth Staples took her conveyance expressly subject to the mortgage. Whether valid or not, as between the parties to it, she could not dispute its validity. She took only such interest in the property as remained over and above the mortgage; and that was the only interest which she could bind by any assumption or charge. The disposition of the proceeds of the mortgage, if collected, was a matter to be adjusted between the mortgagor and mortgagee. As to Elizabeth, it was a valid lien. On a foreclosure of the mortgage the purchaser obtained a title paramount to hers, or that of any one claiming under her. The decree of foreclosure established that the mortgage was a valid lien upon the property, and that it had not been discharged. The appellant, deriving his title under the mortgage, and not under the subsequent deed to Elizabeth Staples, is not affected by that conveyance, even if it should be construed as charging the estate conveyed to Elizabeth in the 180 acres, primarily with the incumbrances.

On these grounds I am unable to see that any error, in the order of sale adopted by the referee, was established.

It may be that the result at which I have arrived is not in accordance with the real equities of the parties as they would appear if all the facts were presented and all the property subject to the incumbrances were proceeded against. But none of the parties appear to have required this, and I can reach no other conclusion on the case as presented.

The orders of the General and Special Terms should be reversed, and the report of the referee confirmed, with costs.

All concur; Miller, J., concurring in result.

Ordered accordingly.