ROBERT M. OLIPHANT et al., as Executors, etc., Respondents, *v.* EDWARD BURNS et al., Impleaded, etc., Appellants.

In October, 1870, H. was the owner of a tract of land subject to a purchase-money mortgage; he conveyed a portion thereof to a seminary, and C., the mortgagee, before the conveyance, executed to H. a release, absolute in its terms, of that portion from the lien of the mortgage. The deed of H. stated that the land was granted on the condition that it should be kept and used as a theological seminary; the grantee covenanted that it would, within five years, erect buildings on the premises for that purpose, and, in case of default, would, upon request, re-convey to H. In April, 1871, H., his wife and C. entered into a contract by which it was agreed that the land covered by said mortgage, except that portion to which the seminary "may retain title," and also other lands owned by H. and wife, should be sold off in lots and the purchase money divided between the parties in specified proportions. In June, 1871, H. conveyed certain other portions of the tract to W., which was also released by C. from the purchase-money mortgage. In May, 1873, the seminary re-conveyed to H. the land so conveyed to it by him, and in June, 1879, W. re-conveyed to H. the portion so conveyed to him. Thereafter H. and wife executed to M., the original plaintiff herein, two mortgages on the portions so re-conveyed to him by the seminary and W. In an action to foreclose said mortgages defendants claimed that by reason of the covenant for re-conveyance in the deed to the seminary the land conveyed, upon being re-conveyed to H., became subject to the agreement and subject to be sold under its provisions, and although M. had no actual notice of the agreement that the record thereof was constructive notice; and so, that she took her mortgage subject to the rights of third parties provided for in the agreement. *Held,* untenable.

*Tefft* v. *Munson* (57 N. Y. 97) and *White* v. *Patten* (24 Pick. 324), distinguished.

In July, 1880, an action was brought by the executors of C. against H. and others to enforce specific performance of the said agreement. The complaint, in describing the property to be affected, excluded the parcels sold to the seminary and to W. M. was made one of the defendants. She appeared and set up the releases, and thereupon, by consent, the complaint was dismissed as to her. The judgment therein, to which none of the remaining defendants appeared to have raised any objection, directed the sale of the seminary parcel with the land described in the complaint. After the commencement of the action, but before entry of judgment therein, one of plaintiffs' mortgages was executed. *Held,* that the *lis pendens* in that action was no notice to M., as the complaint excluded the seminary parcel, and any agreement

between third parties to include it therein and in the judgment was ineffectual to affect her rights under her mortgage, and, therefore, so far as she was concerned, there was a legal unincumbered title in H. at the time he executed the mortgages in question.

Also, *held*, that it was not necessary for the complaint to allege or for plaintiff to prove as part of her case that the mortgages were given for value; that while it might have been her duty to do this, after proof of the agreement by defendant, no objection having been taken on the trial because of failure to make this proof, the question could not be presented on appeal.

Pursuant to the judgment in the action for specific performance the seminary tract was sold to defendant B. By the judgment the referee appointed to sell was directed to pay all liens for taxes or assessments. Upon petition of the referee, and after hearing and upon request of B. and other purchasers, but without notice to the plaintiff in that action or to H. or M., an order was made directing the referee to pay out of the purchase moneys a sum which had been agreed upon between the purchasers and the town for taxes on the property included in the judgment, and also upon that conveyed by H. to W. and re-conveyed by him to H. By the order the purchasers, on proof of payment of the taxes, were allowed to retain the tax leases, certificates and assignments to them by the town, for the protection of their title. Upon the trial of this action B. claimed title and possession under the tax leases; that their validity could not be determined in this action, and that the same were paramount to the mortgages. *Held*, untenable; that while it was to be presumed that the seminary parcel was inserted in the judgment and sold with the consent of the parties to the action, the premises were in law sold subject to M.'s mortgages, and the duty of paying the taxes rested upon the mortgagor, which duty was discharged by the payment out of the proceeds of sale; and so, although by the order the purchasers were allowed to take assignments, this did not alter the character of the payment, and the taxes and tax titles were thereby extinguished.

*Reynolds* v. *Stockton* (140 U. S. 254). distinguished.

Subsequent to the re-conveyance to H. of the lots conveyed by him to W., H. conveyed them to another, and on the same day the grantee conveyed them to the wife of H., in whose name the title stood when the second mortgage to M. was executed; she died intestate, and through conveyances from her husband and heirs S. W. P. acquired title; he, after the payment of the taxes as above stated, conveyed the premises to his son, defendant C. W. P., "subject to all liens and incumbrances." S. W. P. purchased certain lots at the referee's sale and joined with B. in the request for the order as to payment of taxes. *Held*, that while, if S. W. P. had taken possession under his tax title, he might have set up such title and claimed it paramount to the mortgages, and while the validity of the claim could not have been litigated in the foreclosure

suit, yet, as S. W. P. had conveyed the premises subject to all liens and incumbrances, it was competent for plaintiff to show that the tax title had been extinguished, and this having been proved, the mortgages were existing liens, and the title of the grantee C. W. P. was subject to them; that while the premises were not included in the judgment in the specific performance suit, yet, as part of the proceeds of the sales therein, which were in fact moneys of the mortgagor, were applied in payment of such taxes at the request of S. W. P., he could not claim that the payment was made by himself; and so, that the tax title was preserved.

Also *held*, that the report of the referee, in which he stated the payment by him of the taxes, pursuant to the order, was competent evidence and sufficient, in the absence of any proof to the contrary, to show the payment even as against the said purchasers B. and S. W. P.

The lots purchased by S. W. P. at such referee's sale were also included in the conveyance by H. to W., and were re-conveyed with the other land by the latter to the former, and were included in plaintiff's mortgages. They were never released from the purchase-money mortgage and were included in the agreement. They were directed to be sold by the judgment in this action subject to said mortgage. *Held*, that as to these lots also it was incompetent for the purchaser to use the money of the mortgagor for the purpose of purchasing the tax title and setting it up as paramount to plaintiff's mortgages; and that the provision in the judgment as to their sale was proper.

(Argued May 2, 1895; decided May 21, 1895.)

Appeal by defendants, Burns and Parker, from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 8, 1893, which affirmed a judgment in favor of plaintiffs entered upon a decision of the court on trial at Special Term.

This action is continued here under the above title of the executors of Anne A. Morss against Edward Burns and Charles W. Parker, impleaded with others. Miss Morss, the original plaintiff, died subsequent to the appeal of the above defendants to this court. The action was commenced to foreclose two mortgages upon the same property, executed by Thomas R. Hawley and wife to the deceased, Anne A. Morss, the first one having been executed on the 10th of June, 1879, to secure the payment of $4,000 and interest in one year, and the other on the 26th of October, 1881, to secure

the payment of $3,000 and interest in one year thereafter. The defendants Burns and Parker were made parties to the action of foreclosure and the complaint contained the usual allegations against them, as having or claiming to have some interest in or lien upon the mortgaged premises or some part thereof, which had accrued subsequent or was subject to the lien of the plaintiff's mortgages. The defendants answered the complaint and among other things denied that the mortgagors had any right, title or interest in or to the land described in the mortgages at the time of the execution thereof, and also it was alleged that by virtue of the judgment in another action to which the plaintiff in this action had been made a party, all her rights under these mortgages had been barred and foreclosed, and these premises had been sold under and by virtue of the judgment in such other action discharged from any claim, charge or lien of the plaintiff's alleged mortgages or either of them. The defendants also denied that they had or claimed any interest in or lien upon the premises as accruing subsequently to the lien of the plaintiff's mortgages. The action upon these issues was once tried and resulted in a judgment dismissing the complaint in regard to the defendants Burns and Parker, which judgment on appeal the General Term reversed and granted a new trial of the action, and upon such new trial judgment of foreclosure was obtained against all the defendants, which judgment has been affirmed by the General Term and the defendants Burns and Parker have appealed here.

The facts in the case are somewhat complicated, but a statement of some of them is necessary in order to clearly understand the questions involved herein.

It appears that in September, 1870, the defendant Thomas R. Hawley was the owner of a large amount of land in the county of Westchester, which he was desirous of cutting up into lots and selling off at remunerative prices. A large portion of this land he had obtained from one Hawley D. Clapp, who had conveyed the same to him in or about September, 1870. Mr. Hawley and his wife had given back to Mr. Clapp a pur-

chase-money mortgage for $150,000, dated September 24, 1870. This mortgage was duly recorded October 11, 1870. Mr. Clapp and Mr. Hawley were both interested in this scheme for cutting up the land into villa plots, and in order to improve the prospects of the sale of the balance it was determined to convey to the General Theological Seminary of the Protestant Episcopal Church in the United States, free and clear of all incumbrances, a tract containing 30 acres of the land above mentioned. Accordingly, and on or about the 10th of October, 1870, Mr. Clapp duly released the 30 acres intended for the seminary from the lien of his $150,000 mortgage. This release was given to Mr. Thomas R. Hawley, and was absolute and full. On October 15, 1870, Mr. Hawley and wife conveyed this 30 acres thus released, to the above-named seminary. This deed stated that it was granted upon the condition that the land should be used and kept by them, the parties of the second part and their respective successors, for the purpose of a theological seminary, and the deed contained a covenant on the part of the seminary that it or its successors would, within five years from the date of the deed, erect buildings upon the premises for the purpose of a theological seminary, or that, in default of so doing, the seminary would, upon request, re-convey the premises to Thomas R. Hawley, one of the parties of the first part, his heirs or assigns, free, clear and discharged from any former or other gift, grant or conveyance thereof by the seminary, and from any lien or incumbrance suffered by them or either of them.

While the 30 acres or seminary tract was still owned by and in possession of the seminary, and on April 24, 1871, Thomas R. Hawley and Augusta W. Hawley, his wife, and Hawley D. Clapp, the mortgagee of the $150,000 mortgage, made and executed what is termed the tripartite agreement, which was duly recorded, by which it was agreed that the land covered by the $150,000 mortgage, together with other land owned by the Hawleys ("except that portion of the farm secondly above mentioned to which the General Theological Seminary of the Protestant Episcopal Church of the United States may *retain*

title "), should be sold by the Hawleys "with all proper and judicious dispatch," in such lots and sizes as should be agreed upon, and of the purchase money arising from the sales of such lots Mr. Clapp was to have fourteen-twenty-fourths and the other parties ten-twenty-fourths. Provision was made for the taking of security for a portion of the purchase money not paid in cash, and other provisions, not here particularly material, were contained in the agreement.

Things remained in this condition until the 15th of June, 1871, when Thomas R. Hawley and wife conveyed to one R. M. Waters certain other portions of the land covered by this $150,000 mortgage, including the so-called lots 70 and 71, and on that day Hawley D. Clapp released from the lien of his mortgage all of the premises thus conveyed by Hawley to Waters, with the exception of lots 70 and 71, which were not released and were conveyed to Waters subject to the lien of the Clapp mortgage.

On the 5th of May, 1873, the seminary having up to that time failed to build, conveyed the land back to Hawley, and that conveyance was recorded on the 23rd of September, 1875, and on the 9th of June, 1879, by deed recorded on that day, Mr. Waters reconveyed to Mr. Hawley all of the lots which Hawley had conveyed to him. Hawley was thus on June 9, 1879, seized of all the property which had been conveyed to the seminary and to Waters, and that property when the first of the two mortgages to plaintiff's testatrix was given stood in his name freed from the lien of the $150,000 mortgage, except the two lots Nos. 70 and 71 above spoken of. In the meantime, and about October, 1874, Mr. Clapp began an action against Hawley and others to foreclose the $150,000 mortgage, and in that complaint it was stated that the property deeded to the seminary and to Waters (except lots 70 and 71) had been released from the lien of the mortgage, and the complaint prayed for a foreclosure in regard to all the other land covered by the mortgage. Judgment was entered for the plaintiff in 1875, which provided for the sale of all the land described in that mortgage, excepting the premises which

had been released from the mortgage by Clapp and then conveyed to the seminary and to Waters. The judgment in that action was subsequently reversed by the General Term and a new trial ordered, and upon appeal to this court from the order granting the new trial the order was affirmed. The case is reported in memorandum in 69 N. Y. 625. It was reversed on the ground that the tripartite agreement above mentioned had taken the place of the $150,000 mortgage and the mortgagee's rights were to be governed by that agreement.

On the 28th of July, 1880, Mr. Clapp having in the meantime died, his executors commenced an action against Thomas R. Hawley and others for the specific performance of the provisions of the tripartite agreement above mentioned and to obtain a sale of the property included in that agreement, including lots 70 and 71.

The complaint in that action described the property to be affected by it, including lots 70 and 71, but excluding from its description the 30-acre Seminary tract and the other land that had been once conveyed to Waters. Anne A. Morss, the plaintiffs' testatrix, was made one of the defendants in that action (the second mortgage to her not then having been given), and she appeared in it and answered the complaint and set up the releases of the land from the $150,000 mortgage, and upon the trial of the action on the 12th of March, 1881, she put in evidence such releases, and the complaint was as to her dismissed by consent and her name thereafter omitted from the title and from the findings of fact and from the final judgment. The defendants Hawley having appeared in the same action and answered and gone to trial, the case was tried and judgment rendered, which judgment, instead of excluding the so-called 30-acre Seminary tract, directed that such tract should be sold with the rest of the property described in the complaint. The record thus showed a complaint to compel the Hawleys to sell certain land in which the Seminary tract was excluded, the dismissal of the complaint by consent as to Miss Morss, the appearance of the Hawleys in the action, their answer and their taking part in the trial,

and then a judgment following the trial in which the Seminary tract is directed to be sold with the rest of the land described in the complaint. The record does not affirmatively show an amendment of the complaint so as to include the Seminary tract within its prayer for judgment and sale, nor does the record show an affirmative and formal consent on the part of the Hawleys to the sale of such tract under the judgment. But there is no evidence in the record of any objection being taken by any of the parties to this inclusion of the Seminary tract, and all the parties interested in the question, with the exception of Miss Morss, were present at the trial and taking part therein. No exception is taken to the judgment, or to any subsequent proceedings thereunder, by the Hawleys or Clapp so far as the record shows. Pursuant to the judgment entered the referee appointed therein sold, on the fifth of August, 1889, the premises known as the Seminary tract to the defendant Burns, and the lots Nos. 70 and 71 to the defendant S. Webber Parker. The rest of the land which had been conveyed by Hawley to Waters, and back again by Waters to him, and which was covered by the mortgages to the plaintiffs' testatrix herein, was excluded from this judgment. The history of the title to that property is this: Subsequent to the re-conveyance of the lots by Waters to Mr. Hawley, and in May, 1880, he conveyed those premises to Charles B. Collins, who on that day conveyed the same to Augusta B. Hawley, the wife of Thomas R. Hawley, in whose name the title stood when the Hawleys executed the second mortgage to plaintiffs' testatrix in October, 1881. In August, 1888, Mrs. Hawley died intestate, seized of this property, leaving her surviving her husband and three sons. By deed from Thomas R. Hawley to his son R. W. Hawley, and by R. W. Hawley, in his own interest and as guardian for his brothers, and on the 27th of January, 1890, the property was conveyed to S. Webber Parker, one of the defendants herein. S. Webber Parker, on February 1, 1890, conveyed these lots to Charles Warren Parker, his son, one of the defendants

herein, "subject to all liens and incumbrances now existing on the several pieces of property, or any of them." It will be remembered that lots 70 and 71 had been sold under the judgment in the specific performance action and had been purchased by S. Webber Parker, who, on January 6, 1890, conveyed them also to Charles Warren Parker.

Coming back to the judgment in the specific performance action, an inspection thereof shows that it directed the sale of the property mentioned in the complaint, and also the Seminary tract of thirty acres, and from the proceeds of such sale the referee appointed in the judgment was directed to pay any lien or liens upon said premises so sold at the time of such sale for taxes or assessments. The sale of the lands, including the Seminary tract, took place under the judgment of foreclosure and sale on the 5th of August, 1889, and on September 5, 1889, the referee's deed to Edward Burns for the Seminary tract was delivered, and also the deed to S. W. Parker for the lots he purchased, numbers 70 and 71. On November 26, 1889, upon the petition of the referee, and upon his motion, and after hearing counsel for the purchasers, Parker and Burns, and at their request, but so far as appears without any notice to the plaintiff or the defendant Hawley in that action, or to Miss Morss, the court made an order permitting the referee to pay the sum of about $8,000 to the purchasers as an amount agreed upon between the purchasers and the town of Mamaroneck, to be paid in full for taxes upon the property included in the judgment, and upon the Waters property, and this payment was to be made out of the purchase price of the sale of the property by the referee, and upon proof by the purchasers that they had paid those taxes, and by a provision in the order the purchasers were allowed to retain the tax leases, certificates and assignments to them from the town for the protection of their title. It appears from the report of the referee, which was filed April 25, 1890, that the provisions of the above order were carried out, and that the referee had paid to S. Webber Parker for taxes the sum mentioned in the order as

the amount agreed to be paid to the town of Mamaroneck for full settlement of its claim for such taxes, and had taken Parker's receipts therefor, and that Parker had taken the assignment of tax leases from the town. These leases cover the lands included in both mortgages of the plaintiffs' testatrix herein, and Parker assigned to Burns those leases which cover the Seminary tract and retained for himself those which cover the other property. At the commencement of this action Burns was in possession of the Seminary property and Charles Warren Parker, under his deed from his father, was in possession of the other property covered by the mortgages of plaintiffs' testatrix. They both claimed to be in possession under these tax titles. It is not found that this was their only claim. It will be seen that Miss Morss was a stranger to all these proceedings subsequent to the time (May 7, 1881) when the complaint in the specific performance action was dismissed as to her. A formal order was subsequently, on Sept. 28, 1889, entered to that effect *nunc pro tunc* as of the time it was actually made.

Upon the trial of this action these defendants, Burns and Chas. W. Parker, claimed title under the tax leases, and alleged that they were paramount to the mortgages, and they insisted that their validity could not be determined in this action. The court found that they were in possession of the respective properties at the time of the commencement of this action, and claimed to be the owners thereof under their tax titles, and that when they procured the assignment to them from the town of Mamaroneck of the tax leases they did not intend to merge such title in any other title which they might have. The court did not find that the defendants claimed possession under no other title. It made decree for the sale of the premises under the mortgage of the plaintiffs' testatrix, cutting off all title which the defendants set up under those tax leases, and providing for the conveyance of a title by the referee which should be paramount to any title derived from such tax leases, excepting as to lots 70 and 71, which were directed to be sold subject to the lien and rights under the

$150,000 mortgage or its substitute, the tripartite agreement above stated.

*Michael H. Cardozo* for appellant Burns. The title of the defendant Burns to the seminary tract is prior and paramount to the title of the plaintiffs. (Cooley on Taxn. 500, 506; Hilliard on Taxn. 530; *Blake* v. *Howe*, 15 Am. Dec. 684; *Dunkley* v. *Van Buren*, 3 Johns. Ch. 330; *Freeman* v. *Alderson*, 119 U. S. 187; *Pennoyer* v. *Neff*, 95 id. 714; Brown on Jurisdiction, 169, 199; *Corwith* v. *Griffing*, 21 Barb. 9; *Reynolds* v. *Stockton*, 140 U. S. 254; 27 Abb. [N. C.] 132; *Munday* v. *Vail*, 34 N. J. L. 418; *Windsor* v. *Mc Veigh*, 93 U. S. 274; *Hovey* v. *Elliott*, 145 N. Y. 126; *Laverty* v. *Moore*, 33 id. 658; 1 Black on Tax Tit. § 570; *Wright* v. *Sperry*, 21 Wis. 336; *Blackwood* v. *Van Vliet*, 30 Mich. 118; *Sturdevant* v. *Mather*, 20 Wis. 606; *Gardiner* v. *Gerrish*, 23 Maine, 46; *Link* v. *Doerfer*, 42 Wis. 395; *Seaver* v. *Cobb*, 98 Ill. 203; *Bybee* v. *O., etc., R. R. Co.*, 139 U. S. 633; *Chard* v. *Holt*, 136 N. Y. 30, 44; *Arthurs* v. *King*, 95 Penn. St. 172; *Moss* v. *Shear*, 25 Cal. 38; *Bowman* v. *Cockrill*, 6 Kans. 311; *Moulton* v. *Cornish*, 138 N. Y. 133, 145; *Brainard* v. *Cooper*, 10 id. 356; *Francklyn* v. *Hayward*, 61 How. Pr. 43; *Smith* v. *Roberts*, 91 N. Y. 470; *Edgerton* v. *Young*, 43 Ill. 464; 2 Wash. on Real Prop. 193; *McLaughlin* v. *Green*, 48 Miss. 175, 209; *Brown* v. *Simons*, 44 N. H. 475; *Moore* v. *Titman*, 44 Ill. 370; *Williams* v. *Townsend*, 31 N. Y. 411; *Ten Eyck* v. *Craig*, 62 id. 406; *Watterson* v. *Devoe*, 18 Kans. 223; *Morrison* v. *Bank*, 81 Ind. 335; *Morrow* v. *Dows*, 28 N. J. Eq. 459; *Cameron* v. *Irwin*, 5 Hill, 280; *Nellis* v. *Lathrop*, 22 Wend. 121; *In re Wilbur* v. *Warren*, 104 N. Y. 192; *Weichselbaum* v. *Curlett*, 20 Kans. 709; *Lanier* v. *Smith*, 37 Hun, 529; *C. M. L. Ins. Co.* v. *Bulte*, 45 Mich. 113; *Cromwell* v. *MacLean*, 123 N. Y. 474; *Nelson* v. *Brown*, 144 id. 384; *M. Bank* v. *Thompson*, 55 id. 7.) Even if the appellants are disabled from acquiring a tax title to the premises which were sold pursuant to the judgment in *Clapp* v. *Hawley*, and are

simply and solely in the position of prior mortgagees, the second of the two mortgages held by the plaintiffs is in no event a lien upon the property, and the judgment, in so far as it permitted the enforcement of that mortgage, is incapable of support. (*Ayrault* v. *Murphy*, 54 N. Y. 203.) The title of the defendant Parker to lots 54, 56, 57, 58, 59, 60, 116, 119 and 120 is prior and paramount to the title of the plaintiffs, and the sale should have been decreed to be subject to his prior rights and interests therein. (*McConihe* v. *Fales*, 107 N. Y. 404; *Freeman* v. *Auld*, 44 id. 50; *Chard* v. *Holt*, 136 id. 30.) Whatever may be the true view as to the rights of the appellants under the tax titles which they have acquired, and whatever the true construction of the tripartite agreement, there can be no doubt that, under the findings of the trial court by which the respondents are concluded, the dismissal of the complaint was logically required; and the judgment foreclosing and barring the interest of the appellants must, therefore, be reversed. (*Place* v. *Hayward*, 117 N. Y. 487; *Wangler* v. *Swift*, 90 id. 38; *Rogers* v. *Murray*, 3 Bosw. 357; *Bunter* v. *O.*, etc., *Ins. Co.*, 4 id. 254; *Emerson* v. *County of Santa Clara*, 40 Cal. 543; *Fleming* v. *Ins. Co.*, 4 Whart. 59; *Schwinger* v. *Raymond*, 83 N. Y. 192; *Bennett* v. *Bates*, 94 id. 354, 367; *Wahl* v. *Barnum*, 116 id. 87, 89.)

*Wilson Brown, Jr.*, for appellant Parker. It was error to admit evidence attacking defendants' tax leases for any purpose. (*Cromwell* v. *MacLean*, 123 N. Y. 474; *Mills* v. *Odell*, 21 Wkly. Dig. 61.) It was irregular and improper to allow records prior to the mortgages of plaintiff, and they could only have been offered by plaintiff to confuse the court in anticipation of the defense, or else to attempt to try the validity of defendants' tax titles pleaded by them, and no tax titles can be tried in this foreclosure action against the objection of defendants, and unless by their consent. (*Cromwell* v. *MacLean*, 123 N. Y. 474.) The conclusion of the court that the plaintiff is entitled to a judgment of foreclosure and

sale against the appellants cannot be sustained. (*Champney* v. *Cooke,* 32 id. 543.)

*C. N. Bovee, Jr.,* for respondent. As to all of the property covered by her mortgages, except lots 70 and 71, Anne A. Morss was a *bona fide* mortgagee, without notice of the tripartite agreement between Hawley and wife and Clapp, or of the judgment directing a sale of the seminary tract in the suit of Clapp's executors against Hawley, and is entitled to the protection of the Recording Act. (2 R. S. chap. 3, § 38; *Baker* v. *Thomas,* 61 Hun, 17; *Bacon* v. *Schoonhoven,* 87 N. Y. 446; *Frear* v. *Sweet,* 118 id. 454.) Burns, as the owner of the equity of redemption of Thomas R. Hawley and Augusta W. Hawley in the thirty acres seminary tract, could not acquire and hold tax titles as against a prior mortgagee from the owner whose equity of redemption he had acquired. Such purchase operated as a payment of the tax and an extinguishment of the tax title. (Thomas on Mort. § 29; *Christy* v. *Fisher,* 58 Cal. 256; *M. S. Bank* v. *Bacharach,* 46 Conn. 513; *Cooper* v. *Jackson,* 99 Ind. 566; *Ins. Co.* v. *Patten,* 98 id. 209; *Fair* v. *Brown,* 40 Iowa, 209; *Anson* v. *Anson,* 20 id. 55; *Horton* v. *Saunders,* 13 Mich. 409; *Fells* v. *Barbour,* 58 id. 49; *Woodbury* v. *Swan,* 59 N. H. 22; Jones on Mort. § 680; *Gould* v. *Day,* 94 U. S. 405; *Chard* v. *Holt,* 136 N. Y. 30, 44; Cooley on Taxn. 345; Wiltse on Foreclosure, § 505; *De Forest* v. *Farley,* 62 N. Y. 628; *Blakeley* v. *Calder,* 15 id. 617; *Graham* v. *Bleakie,* 2 Daly, 55; *Ogden* v. *Walters,* 12 Kans. 282; *Woodhull* v. *Little,* 102 N. Y. 165.) Burns and Parker are estopped from setting up the tax titles acquired by them from the town of Mamaroneck under the order of the court dated November 26, 1889. (*Chard* v. *Holt,* 136 N. Y. 30; Cooley on Taxn. §§ 23, 345, 346; *Blake* v. *How,* 15 Am. Dec. 681, and note, 684, and cases in notes; Hilliard on Taxn. 530; Thomas on Mort. § 29; *Moss* v. *Shear,* 25 Cal. 45; *Christie* v. *Fisher,* 58 id. 256; *Fair* v. *Brown,* 40 Iowa, 209; *Horton* v. *Saunders,* 13 Mich. 409; *Anson* v. *Anson,* 20 Iowa, 55.) Charles W. Parker, as the owner of lots 54,

56, 57, 58, 59, 60, 116, 119 and 120, by conveyances from S. W. Parker, "subject to all liens or incumbrances now existing on the several parcels or any or either of them," is estopped from questioning the validity of plaintiff's mortgages. (*McConihe* v. *Fales,* 107 N. Y. 404.) It was competent for plaintiff to give in evidence the chain of title to the property from the date of the $150,000 Clapp mortgage down to the time of the commencement of the actions under the issues raised by defendants' answer. (*Brown* v. *Volkening,* 64 N. Y. 76; Wiltse on Foreclosures, § 193; *Horton* v. *Saunders,* 13 Mich. 409; *Helck* v. *Reinheimer,* 105 N. Y. 470.) A dismissal of the complaint was not required by the conflicting findings. They are all reconcilable, and can be found to harmonize with the other findings and the judgment. (*Green* v. *Roworth,* 113 N. Y. 462–467; *T. N. Bank* v. *Parker,* 130 id. 415, 417; *Cohoes* v. *C. Co.,* 134 id. 397–405.)

PECKHAM, J. Upon this somewhat complicated state of facts the defendants Charles W. Parker and Edward Burns, upon their appeal here, have argued several objections which they have urged as fatal to the plaintiffs' judgment herein.

First. It is claimed that the plaintiffs' testatrix took her mortgages subject to the provisions of the tripartite agreement as a substitute for the $150,000 mortgage above mentioned, and that under that agreement the lands covered by the mortgages were to be sold by Mr. Hawley, and fourteen-twenty-fourths of the proceeds of the sale were to go to Mr. Clapp and the balance to Mr. Hawley. The defendants urge that although the Seminary tract when conveyed to the Seminary was released from the lien of the $150,000 mortgage, yet by reason of the covenant in the deed to the Seminary the clause in the tripartite agreement which provides for the sale of all the property "except that portion of the farm secondly above mentioned to which the General Theological Protestant Episcopal Church of the United States may *retain* title," such Seminary tract upon being re-conveyed to Mr. Hawley became subject to the tripartite agreement, and became a portion

of the land which under the provisions of such agreement was subject to be sold, and the proceeds divided as stated. The plaintiffs' testatrix had in fact no notice of this tripartite agreement, but the defendants claim that the record thereof was constructive notice to all subsequent purchasers or mortgagees, and that the plaintiffs' testatrix was, therefore, bound to know of its existence and its contents, and that when she took her mortgages she took them subject to all rights of third parties provided for in that agreement. It will be recollected that this tripartite agreement was made between the Hawleys and Mr. Clapp after the Hawleys had conveyed this Seminary tract to the Seminary, and before the Seminary re-conveyed it to Mr. Hawley. Tracing the title, therefore, of this tract from Mr. Clapp to Mr. Hawley, and from Mr. Hawley to the Seminary, and back from the Seminary to him, without searching against Mr. Hawley during the time when he had no title to the Seminary tract, this tripartite agreement would not appear. But it is urged on the part of the defendants that the title having once come into Mr. Hawley, it was the duty of any one searching the title to continue the search against Mr. Hawley after he had parted with the title and up to the time it again was vested in him, and that this duty was strengthened by reason of the condition and covenant contained in the deed from Hawley to the Seminary.

If this alleged duty had been discharged then it is said this agreement might have been discovered. I do not think that the record of the agreement was constructive notice to the plaintiffs' testatrix of the existence of such agreement. The form of the deed to the Seminary left no title in Hawley. If during the time in which the title to the Seminary tract was in the Seminary, Mr. Hawley had conveyed that tract, not having the title in him, and had given a deed with warranty of title, the subsequent acquisition of the title by Mr. Hawley would inure at once to the benefit of his grantees with warranty, by virtue of such warranty and the estoppel which would arise therefrom. Mr. Hawley in such case would be estopped from setting up as against his grantee the fact that he was not

vested with any title to the property which he conveyed with warranty at the time of such conveyance, and the privies of Mr. Hawley in law, in blood or in estate, would be equally bound by that estoppel. The title would pass to his grantees with warranty the very instant it was acquired by Hawley. Thus the record of the deed with warranty and the title of his grantees in such deed would both precede the record of the mortgages to the plaintiffs' testatrix, and she would, in that case, have been bound by the estoppel, and the record would have been notice to her of the existence of the deed. Such is the case decided in the Commission of Appeals in *Tefft* v. *Munson* (57 N. Y. 97), cited by the learned counsel for the appellants. In that very case the learned judge who delivered the opinion of the court assumed it to be the rule that the record of a conveyance, made by one having no title, would ordinarily be a nullity, and constructive notice to no one. But it was held that the plaintiff in that case could not avail himself of this rule on account of the operation of the estoppel in the prior mortgage. The case of *White* v. *Patten* (24 Pick. 324) was therein cited as analogous to the case then at bar. A reference to the case in Pickering shows the same principle of an operation by estoppel on account of warranty.

But in this case there was no conveyance, there was no warranty and there was no estoppel. It was not the mortgaging of after-acquired property. When the agreement was made by which Hawley bound himself to proceed and take measures to sell certain lands owned by him at auction and to divide the proceeds in a certain way, the title to the Seminary tract was not in him. He simply agreed that as to such land it should be included in the agreement, if the land came back to him. That is, he agreed in that event to sell to some one else at auction and divide the proceeds with Mr. Clapp. That was no such conveyance as operates by estoppel when the title is subsequently acquired and it is no such instrument that the recording of it when Hawley had no title to the Seminary tract, operates as constructive notice to a subsequent mortgagee after Hawley had title and who has his mortgage

recorded.  It might perhaps be doubted whether the language of the agreement in regard to its application to the Seminary land placed that land necessarily within the agreement, but it may here be assumed as the court found that it did.   There is no claim that the plaintiffs' testatrix had notice in fact of the circumstances of this agreement and consequently when she took her first mortgage she was not affected by the existence or provisions of that agreement.

The defendants urge, however, that in regard to the second mortgage to the plaintiffs' testatrix in October, 1881, after the trial in the action to enforce specific performance of the tripartite agreement, she took such mortgage with notice of the existence of the agreement by reason of the *lis pendens* in that action and by virtue of such judgment.   She was no party to that action.   The judgment therein was not entered until February 4, 1882, and sometime subsequent to the execution of the second mortgage.   One of defendants' objections offered to receiving the judgment in evidence was that it was not admissible as made after the delivery of the mortgages to plaintiff.   The complaint therein had been dismissed upon the trial as to her and from that time her name had been omitted from the title of the cause, from the findings of the court and subsequently from the judgment entered thereon. She was, therefore, a stranger to the action and it could not operate to charge her with any notice of the existence of the agreement.   The *lis pendens* was no notice because the complaint in the action excluded the Seminary tract and any agreement between third parties to include it therein and to insert it in the judgment was ineffectual to in any way affect her rights under her mortgages.   There was nothing in the complaint to charge her with notice of the tripartite agreement as to this property.   While proper enough as between the parties to the action who appeared upon the trial and consented thereto, the agreement to include the Seminary tract in the decree of sale had no effect upon the rights of the plaintiffs' testatrix.

Second.  It is urged, however, that this agreement and the

provisions in regard to it are superior to all subsequent grantees or mortgagees, excepting those who occupy the position of grantees or mortgagees for value, and there is no proof in this case that the plaintiffs' testatrix occupied such a position. It is said that this is not alleged in the complaint, and that there is no proof in the case to that effect. It was not necessary to allege it in the complaint, although I think it is substantially set forth. The record of the tripartite agreement was not constructive notice, and, so far as she was concerned, there was a legal title on the record and unincumbered in Mr. Hawley at the time he executed the mortgages in question. He was not only clothed with the record title, but he was in possession thereof under that title, and as to plaintiffs' testatrix there was no prior record of any conveyance which was constructive notice to her. There was, therefore, no reason for alleging in the complaint what the plaintiff was not presumed to know, that is, the existence of the tripartite agreement, and, therefore, it was not necessary for her to state the facts which would prove her a purchaser for value, or to allege that she was such purchaser. There was nothing on her side of the case to present the question of value. If the agreement had been necessarily a part of the plaintiffs' case, and it became necessary for her to avoid the effect of its priority of execution, it might have come within the rule which requires a subsequent grantee or mortgagee in certain cases to allege in his pleading and to show that he occupied the position of a purchaser for value. After the defendants proved the tripartite agreement, it may then have been the duty of plaintiff, when she had the case again, to show that she was a mortgagee for value, and if the objection had been taken on the trial the plaintiff might then have shown more fully the facts regarding the execution of the mortgages. The finding of the court upon the trial, if based upon any evidence, that there was due from defendant Hawley upon the bonds accompanying the mortgages the amount of some $10,000, no part of which had been paid, showed that the plaintiffs' testatrix did occupy the position of a mortgagee for·

value. The proof of the due execution of the bonds under seal upon the trial imported a consideration, and no point of a failure of consideration or that plaintiffs' testatrix had not advanced a valuable consideration was taken upon the trial. No motion to dismiss the complaint or for other relief on that ground was made, and, so far as the record shows, there was an entire absence of any action of defendants' counsel based upon a lack of evidence of this kind. It is too late to urge a ground for reversal here which was never brought to the attention of the trial court, and which, if it had been, might have been at once obviated. There was proof upon the trial that the principal and interest of the two mortgages were due and unpaid. The evidence was sufficient to sustain the finding that such an amount was due, and to show, in the absence of all objection or evidence to the contrary, that plaintiffs' testatrix was a purchaser for value.

Third. The defendants Burns and Charles Warren Parker, however, claim that they are in possession of their respective pieces of property under tax titles, which are paramount to these mortgages and to the title of the mortgagors, and that the regularity or validity of such title cannot in any event and against their objections be tried in this action. They also claim that they are in a position to set up as against all the world such tax titles and all rights flowing therefrom. The defendant Burns says that he is in a position to set up such tax title as to the Seminary tract, because as matter of law he never took any title whatever to that tract by virtue of the referee's deed to him purporting to convey such tract by virtue of a judgment in the action to enforce the provisions of the tripartite agreement. He says that he never took any such title because the complaint in that action excluded ,from its operation the Seminary property, and that there is no amended complaint in the record bringing such property within its description of the land to be sold and that under such circumstances its inclusion in the judgment and an assumed sale of the property thereunder was wholly without jurisdiction, the sale was entirely void and no title whatever

to the Seminary tract passed by virtue of the deed of the referee. Mr. Burns evidently did not believe this to be the case when he purchased the property at the referee's sale under the judgment in August, 1889, and when he took the referee's deed a month thereafter conveying the Seminary property to him. He certainly did not buy for amusement or take the referee's deed for any such purpose. He had a month in which to examine the title to the lands which he purchased before taking a deed, and it is clear that when he did take one he supposed that he was purchasing something of value. That he supposed at that time that he was getting title to this Seminary property, and consequently that the proceedings leading up to the judgment in the action were regular and valid is also to be inferred from the fact that upon the trial of this action he asked the court to find as a fact, and the court did find, that an action for the specific performance of this agreement and to enforce the sale of the property therein mentioned, *including this Seminary tract,* was commenced July 28, 1880, and on the 14th of May, 1881, judgment was entered in that action directing the sale of property covered by that agreement, including the said Seminary tract of 30 acres. The claim that he took no title is evidently an afterthought to Mr. Burns. It appears, however, that the plaintiffs in that action and the defendants Hawley were not only parties, but that defendants Hawley answered, were present on the trial through counsel and took part in it, and no objection appears to have been made to the including of the Seminary tract in the judgment and to the direction for the sale of such tract with the other lands described in the complaint. It would seem to have been a very proper agreement to make between these parties and thus to include a sale of all the property mentioned in the tripartite agreement, including the Seminary tract. No one else had any interest in the matter excepting Miss Morss, the plaintiffs' testatrix, and as to her it would not, of course, be binding. The sale would necessarily, therefore, be subject to her interests, but with that exception every one who had any interest in the property to be sold was before

the court, and, as has been stated, no objection or exception to such proceedings appears to have been taken. It is inconceivable that the Seminary tract was thus included without the consent of these parties interested in this land, who were present upon and taking part in the trial and equally interested in the contents of the judgment. In such event, it is not only proper, but it is the duty of the court to presume that it was done with the consent of these parties, and that a proper amendment to the complaint was actually made, although no formal amendment appears on the record.

This is altogether a different case from that of *Reynolds* v. *Stockton* (140 U. S. 254, 265), cited by the learned counsel for the defendant. In that case a defendant appeared in an action in a state court and responded to the complaint as filed, but he took no subsequent part in the litigation, was not present at the trial, and no consent to the proceedings on the trial could be presumed from the record in the case. The learned judge, delivering the opinion in that case, expressly said that they were not concerned therein as to the power of amendment of pleadings lodged in the trial court, or the effect of any amendment made under such power, for no amendment was made or asked. He further said "there was no appearance after the filing of the answer, and no participation in the trial or other proceedings, and whatever may be the rule where substantial amendments to the complaint are permitted and made and the defendant responds thereto, or where it appears that he takes actual part in the litigation of the matters determined, the rule is universal that where he appears and responds only to the complaint filed, and no amendment is made thereto, the judgment is conclusive only so far as it determines matters which, by the pleadings, are put in issue." The learned judge also said: "Nor are we concerned with the question as to the rule which obtains in a case in which, while the matter determined was not in effect put in issue by the pleadings, it is apparent from the record that the defeated party was present at the trial and actually litigated that matter. In such a case the proposition so often affirmed that that

is to be considered as done which ought to have been done, may have weight, and the amendment which ought to have been made to conform the pleadings to the evidence may be treated as having been made."

The very matter lacking in the case cited is present here. The defendants Hawley were present at the trial, took part in the proceedings, and it must be presumed consented to an amendment and to the inclusion of the lands in the judgment directing their sale. We do not question the correctness of the rule laid down in the case cited from the Federal Supreme Court, and it is consistent with that which has obtained in the courts in this state and been frequently so decided.

The facts in this case are so plain, and the inference of consent so incontestable, that we should be doing violence to every reasonable presumption if we were to hold that this land was included in the judgment against the objection and without the consent of the parties to be affected thereby. No court ought to run counter to so strong a presumption of fact. We must presume, therefore, what we have no doubt is in accordance with the facts of the case, that the complaint was treated and regarded as, though not perhaps formally, amended, and the land was inserted in the judgment with the consent of the parties to the action. Mr. Burns, therefore, upon the purchase of the Seminary lot under that judgment, obtained a title thereto the same as if the land had been at first and formally described in the complaint, and in accordance therewith had been included in the judgment.

On September 5, 1889, after he had received the deed of the referee, pursuant to that judgment, and being vested with the title to the Seminary land by virtue of such deed, we think it clear that he was not in a position to obtain a tax title to the same property under the circumstances detailed in the foregoing statement of facts. A perusal of the order of the court made in November, 1889, under which these tax titles were obtained, shows conclusively that they were obtained with moneys arising from the sale of lands under the decree and judgment of the court in the action to enforce specific performance of the

tripartite agreement. It was the duty of the mortgagor to pay the taxes and keep the property which he had mortgaged free from any lien of that nature. This duty he was discharging when, by virtue of the judgment, he was, through the referee as his agent, paying such taxes with the moneys arising out of the sale of the lands. As the lands were in law sold subject to the plaintiffs' mortgages, the payment of the taxes cleared off incumbrances which might otherwise become and remain paramount to the mortgagor and the mortgages which he had given. The judgment in recognition of this duty of the mortgagor directed the referee, out of the moneys arising from the sale of the lands therein described, to pay "any lien or liens upon said premises so sold at the time of such sale for taxes or assessments." The order for the payment of these taxes was made upon the petition of the referee and the tax return of the supervisor of the town of Mamaroneck, showing over $12,000 of taxes due the town, and after hearing counsel for the motion and for the town, and also counsel for the purchasers at the sale by the referee, and the result of such order was a payment of the taxes at an amount agreed upon between the purchasers and the town less than the amount actually due, and such payment was made out of the proceeds of the sale of the land. It is true the purchasers were permitted by that order to take assignments of the leases and certificates for the purpose, as alleged, of the protection of the title of such purchasers. When consummated the taxes were, nevertheless, paid out of these proceeds of sale, and although the purchasers under this order of the court were allowed to take assignments instead of formally paying the amount of taxes agreed upon, yet such action did not alter the essential nature of the payment, and the taxes and titles were thereby extinguished. The payment by Parker, instead of by the referee, was, so far as the record shows, without the knowledge or consent of the parties to this tripartite agreement, without their appearance in court, without service of any notice of the motion upon them and in violation of the rights of the holder of these mortgages if the

contention of the defendants should now prevail. The plaintiffs' testatrix had the right to insist that the directions of the judgment providing for the payment of the taxes by the referee out of the proceeds of the sale of the lands should be complied with, and that upon such payment the taxes should be extinguished and not kept alive as an earlier incumbrance on the property over her mortgages. She was a prior incumbrancer on the Seminary lands to every one excepting as to liens for taxes, and Mr. Burns could not in violation of the judgment so use the moneys of the mortgagor arising from a sale of those lands as to acquire and set up a title paramount to the mortgages in question. This is not trying the validity of these tax titles, but we hold that by virtue of the purchase of the Seminary tract by Burns under this decree he became incapacitated from thereafter availing himself of the funds which arose out of such sale, and he could not, contrary to the direction to the referee contained in the judgment, pay those taxes himself out of such moneys and hold the tax titles and set them up against these mortgages in question as a paramount title to the lands covered by such mortgages. This applies to the position occupied by Mr. Burns in relation to the Seminary tract. In this light the cases of *Williams* v. *Townsend* (31 N. Y. 411) and *Ten Eyck* v. *Craig* (62 id. 406) are wholly inapplicable.

Fourth. As to the lands which are included in the conveyance by Hawley to Waters and by Waters subsequently reconveyed to Hawley, and then included in the mortgages by Hawley to the plaintiffs' testatrix, the defendant Chas. W. Parker occupies a different position. These lands, excepting lots 70 and 71, which will be spoken of hereafter, were not included in the judgment for sale in the tripartite agreement action, and when the defendant S. Webber Parker bought them or the leases at the tax sale he had no other title to the lands and was not in any position which would preclude him from their purchase, and if made with his own money he would have taken such title as the leases gave him unaffected by any

of the circumstances above described. If S. Webber Parker had taken possession of this Waters land under his tax title, he might have set up such title and claimed it to be paramount to the title of the mortgagor Hawley and to override the title under the mortgage, and such claim by title paramount it would not have been proper in this foreclosure action to litigate under an objection to a trial as to its validity. (See *Cromwell* v. *MacLean*, 123 N. Y. 475.) Although the title was not really a valid one, because the taxes were in fact paid as already stated, yet the foreclosure action was not the proper one in which to test that validity. The rule as to the impropriety of trying the question as to the validity of a paramount title in such an action as this against the objection of a defendant has been reiterated in this court as lately as in the cases of *Jacobie* v. *Mickle* (144 N. Y. 237) and *Nelson* v. *Brown* (Id. 384). (See, also, *Lewis* v. *Smith*, 9 id. 502.)

Mr. S. Webber Parker did not, however, retain his title to these lands. He conveyed the same to his son, Charles Warren Parker, one of the appellants in this action, and such conveyance was made in terms " subject to all liens and incumbrances now existing on the several pieces of property or any of them," and at the time of the commencement of this action the same Charles Warren Parker was in possession of these premises conveyed to him by his father, subject, as stated, to existing incumbrances. The counsel for appellants admits that if plaintiffs' mortgages were in fact at that date subsisting liens, then it might be that the clause in question would estop the appellants from disputing their validity. He insists, however, that they were not existing liens because the tax leases had cut them off. If the taxes had been paid then the mortgages had not been cut off. The title of Mr. Parker was in that event not paramount. Upon these facts, and by reason of that clause in the deed, it was proper to show the whole truth regarding the existence of the tax title, and if, upon the facts shown, such tax title did not exist and had on the contrary become extinguished, then the mortgages were existing liens and Parker's title was subject to them. An inquiry as

to this question was rendered proper by reason of the clause in the deed to Parker from his father. The issue was whether the mortgages in suit were still liens, and they were if the taxes had been paid.

In this way we are brought back to the question as to the effect of the transactions resulting in the payment of the moneys to the town of Mamaroneck and the assumed assignment of the leases and certificates by that town to Mr. C. W. Parker. We have seen that the effect of the transaction was the payment of those taxes with the moneys arising from the sale of the lands sold under the judgment in the action to enforce the specific performance of the tripartite agreement. Those moneys, in fact, paid the taxes on the Waters lands, although these lands were not included in the judgment, just as much as they paid them on the Seminary lands, and Mr. Parker had no more right to claim a payment by him of the taxes on the Waters lands than Mr. Burns had on the Seminary lands, for they were both paid with moneys of the mortgagor which did not belong to either of them.

It is argued, however, that there is no proof that the order which provided for the payment of the taxes as already mentioned was carried out and that all that appears is the order itself. The purchasers Burns and Parker made themselves parties to this order by appearing by counsel and substantially asking that it be made. Although made upon the petition of the referee, the whole order shows that it was a proceeding in their interest, for their accommodation and instituted by them. Subsequent to its entry the referee made his report of the sale under the judgment, and of his proceedings under that order, in which it was stated that he had paid the money provided for in the order, to Mr. Parker, one of the purchasers, and had taken his receipt for the same, and also a release of the referee of all responsibility and claims against such referee individually or otherwise by reason of the taxes or tax leases against the property, or in any order of record affecting the premises sold by such referee. The referee in his report also produced the voucher provided for in the

order as evidence of the payment of the tax to the town by Parker. No exception or objection to that report was ever made or taken by either of these defendants, purchasers, and its statements were not contradicted on this trial, and it remains of record in the action. The defendants object that this referee's report is no evidence whatever against them of the payment of the moneys spoken of in the order and report and that there is no other evidence in the case showing such payment. The case of *Mills* v. *Odell* (21 Weekl. Dig. 61) is cited in favor of the view that this report of the referee is not competent evidence of the facts therein stated against these purchasers. The case does not bear out the contention of the counsel. It was there held that the report of the referee in partition was not evidence against a county treasurer who had no connection with the action in any form other than to receive the money or a mortgage directed by the decree to be given to him. He was a stranger to the whole proceeding, knew nothing whatever about it and ought not to be bound by the statements contained in the referee's report of his proceedings in such an action. The case here is different. These parties were purchasers at the sale; they made themselves particularly parties to the proceedings which resulted in the payment of these taxes, and we think that the report of the referee in such case is some evidence, not conclusive, but enough in the absence of all contradiction to show the payment of moneys even as against Mr. Burns and Mr. Parker.

Fifth. The lots 70 and 71 (part of the lands conveyed to Waters) were included in the sale under the judgment in the tripartite agreement action and were purchased by Mr. S. Webber Parker. They were never released from the lien of the $150,000 mortgage and were included in the tripartite agreement, and in that respect they differ from the other lands, but in regard to these lots, Mr. Parker having purchased them at the referee's sale, occupies the same position in regard to them as the defendant Burns does in regard to the Seminary tract, and he was, therefore, incompetent to make use of the money of the mortgagor for the purpose of pur-

chasing the tax title and of setting it up as a title paramount to the mortgage of the mortgagees in this action. As they were, however, never released from the lien of this $150,000 mortgage, these lots could not be sold excepting subject to that lien or its substitute, the tripartite agreement, and they were directed to be so sold in the judgment in this action. We see no error in that.

Sixth. It is claimed that there is some inconsistency among the conclusions of law found by the learned court below, and that some are inconsistent with the one which provides for the foreclosure and sale of the lands described in these two mortgages. We think, taking the whole facts and conclusions of law together, there is nothing to prevent the enforcement of the judgment of the Special Term, and that such judgment as affirmed by the General Term of the Supreme Court must be here and in all things affirmed, with costs.

All concur.

Judgment affirmed.