Louis Dorff, Respondent, *v.* Hyman Bornstein et al., Appellants.

Argued January 21, 1938; decided March 8, 1938.

*Lester Grossman, Maurice Edelbaum* and *Henry B. Wilson* for appellants. The lien of a second mortgage does not revive where the foreclosure is not the result of conspiracy or collusion, and the owner's default has been forced upon him by the land's inability to provide its carrying charges. (*Kossoff* v. *Wald,* 245 App. Div. 646; 272 N. Y. 480.) Since the mortgagor was not the purchaser at the foreclosure sale, the second mortgage is entirely non-existent and cannot reattach. (*Otter* v. *Lord Vaux,* 6 De Gex, M. & G. 642; *Plum* v. *Studebaker Co.,* 89 Mo. 162; *Huzzey* v. *Heffernan,* 143 Mass. 232; *Rauch* v. *Dech,* 116 Penn St. 157.)

*Herman S. Bachrach* and *Charles J. Klyde* for respondent. Where an owner of property on which there are two mortgages, both created by himself and on which he is obligated on the bonds thereof, the second being a purchase money mortgage, subordinated by agreement to the first, willfully defaults to cause a foreclosure and repurchases the property from the foreclosing first mortgagee, through his son and daughter acting as his dummies, such purchase reinstates the second mortgage as a valid lien on the property. (*Otter* v. *Lord Vaux,* 6 De Gex, M. & G. 642; *Duer* v. *Jaeger,* 113 Misc. Rep. 743; *Hilton* v. *Bissell,* 1 Sandf. Ch. 407; *Byrnes* v. *Owen,* 243 N. Y. 211; *Carpenter* v. *Carpenter,* 131 N. Y. 101;

*Wheeler* v. *Handy*, 123 Misc. Rep. 775; *Seymour* v. *Seymour*, 120 Misc. Rep. 525; *Ayer* v. *Philadelphia Brick Co.*, 157 Mass. 57; *Brownell* v. *Briggs*, 173 Mass. 529; *Gilson* v. *Hutchinson*, 120 Mass. 27; *Kerr* v. *Erickson*, 24 S. W. Rep. [2d] 21; *Merchant's Nat. Bank* v. *Miller*, 229 N. W. Rep. 357; *Stiger* v. *Mahone*, 24 N. J. Eq. 426; *Home Owners Loan Corp.* v. *Guaranty Title Trust Co.*, 76 S. W. Rep. [2d] 109; *Garlasco* v. *Smith*, 250 App. Div. 534; *Tefft* v. *Munson*, 57 N. Y. 97; *Chamberlain* v. *Forbes*, 126 Mich. 86; *MacAlpine* v. *Zitzer*, 119 Ill. 273; *Tompkins* v. *Halsted*, 21 Wis. 118.) The proof submitted on the trial amply sustains the findings of fact made by the court of Special Term which were unanimously affirmed by the Appellate Division. (*Lefferts* v. *Lefferts*, 263 N. Y. 131; *Haber* v. *Paramount Ice Corp.*, 264 N. Y. 98; *Matter of Stoddard*, 238 N. Y. 147; *Stiger* v. *Mahone*, 24 N. J. Eq. 426; *White* v. *Benjamin*, 150 N. Y. 258.)

RIPPEY, J. In February, 1926, the defendant Hyman Bornstein purchased from one Edna Klyde certain real property situate in Brooklyn for $60,000 and executed and delivered to the seller, as security for part of the purchase price, his bond in the penal sum of $36,000, with interest at six per cent per annum on the principal, of which $1,000 was payable on April 1, 1926 and $2,500 annually thereafter in quarterly installments until April 1, 1938, when the balance of unpaid principal and accrued interest was payable. He gave to the seller a mortgage on the premises as security for the payment of that sum upon the terms specified in the bond.

There was then outstanding a first mortgage lien for $16,000 on the premises, held by the Title Guarantee and Trust Company, which the purchaser assumed and agreed to pay. By the terms of the second mortgage it was expressly agreed that it should be a junior and subordinate lien to the mortgage held by the trust company and to any increase, provided such increase should be paid to the second mortgagee in reduction of the amount of the

bond for which the second mortgage was given as security. Subsequently the trust company loaned Bornstein $4,000 on the security of the property, and that sum, according to the terms of the second mortgage, and with the consent of the holder thereof, became an additional first lien on the premises.

Payments of interest and principal installments required to be paid by the terms of the several bonds and of taxes and assessments were regularly made by Bornstein until April 1, 1932, by which date the principal amount due on the bond given to Klyde had been reduced to $21,875. After that date he failed to make any further payments. On March 14, 1933, the plaintiff became the owner of the bond and second mortgage on the property. On foreclosure of the first mortgage the holder thereof bid in the property on the sale, and the lien of plaintiff was thereby cut off. Some four months after title in the purchaser had been perfected the defendants Benjamin J. Bornstein and Rose Bornstein, son and daughter of Hyman Bornstein, bought the property for $19,000, paying $4,000 in cash and giving back a purchase-money mortgage for $15,000.

This action is brought to foreclose the second mortgage on the theory that the purchasers were dummies for the previous owner, that the previous owner forced the foreclosure of the first mortgage to cut off the lien of the second mortgage and to enable him to acquire the property free of any such lien and that the lien thereof revested upon the previous owner again acquiring title to the property. Plaintiff has so far succeeded, and the appeal is from the judgment of foreclosure and sale.

The property in question was a rooming house or summer hotel located at Coney Island, unsuitably equipped for winter occupancy, with some forty rooms available for leasing during the summer season. By 1931 the economic depression had seriously impaired if not wholly destroyed the rental value and marketability

of real estate. In better times and under more favorable conditions, if all the rooms were rented there might have been an expected gross annual income from the property of about $7,000 which, if received, would have been sufficient to provide for payment of amounts due annually on the two mortgages and insurance and taxes, without providing anything for repairs or maintenance or any return on the investment of the owner. Bornstein had no means with which to make such payments except from moneys derived from income from the property. He had only part-time employment for seven or eight months per year at an average of twenty-two to thirty dollars per week with a family to support. In 1932 he took in from the property from $1,500 to $1,800. After September, 1932, he had no income from the property, as the preceding owner of the second mortgage thereafter had a receiver appointed who took possession and collected rental therefrom.

The lower courts have found that Bornstein, in collusion with his son and daughter, willfully omitted to pay the carrying charges on the property during the years 1931–1933, although able to do so, in order to precipitate a foreclosure of the first mortgage and thereby cut off the lien of the junior mortgage. He was financially unable to meet the required payments, and there is no finding that the income from the property was sufficient to meet them. Whether the situation would be different, in equity, if the income from the property itself had been sufficient to satisfy the carrying charges had it been received by him, we are not called upon to decide. We think it immaterial whether he was otherwise financially able to keep the mortgages from default or whether he deliberately refrained from making any payments thereon.

In situations such as arose in this case there are fundamental principles which we are bound to recognize and which equity cannot set aside. A *bona fide* purchaser (other than the owner) on an unconditional sale of real

property pursuant to a regular foreclosure acquires a clear and absolute title as against all parties to the suit and their privies which relates back to the date of the mortgage so as to cut off all intervening rights and equities (3 Jones on The Law of Mortgages of Real Property [8th ed.], §§ 2121, 2122; *Chicago & Vincennes R. R. Co.* v. *Fosdick*, 106 U. S. 47; *Smith* v. *Gardner*, 42 Barb. 356, 366; *Pardee* v. *Steward*, 37 Hun, 259, 262; *Jaycox* v. *Smith*, 17 App. Div. 146; *Rector, etc.*, v. *Mack*, 93 N. Y. 488, 492; *Sautter* v. *Frick*, 229 App. Div. 345; affd., 256 N. Y. 535, 536; Civ. Prac. Act, § 1085). All parties to the foreclosure sale are estopped from disputing the title acquired by the purchaser on the sale (*McGee* v. *Smith*, 16 N. J. Ch. 462; *White* v. *Evans*, 47 Barb. 179; *Holden* v. *Sockett*, 12 Abb. Pr. 473). Such a title so acquired is beyond attack directly or collaterally. Thereby every interest of the owner has been divested, and his estate has been completely cut off with no outstanding right to redeem (*Lansing* v. *Goelet*, 9 Cow. 346, 391). All rights of subsequent mortgagees have been finally and conclusively cut off and a new estate in the new owner has been created (*Hopkins* v. *Wolley*, 81 N. Y. 77, 84; *Huzzey* v. *Heffernan*, 143 Mass. 232; *Plum* v. *Studebaker Bros. Mfg. Co.*, 89 Mo. 162). The holder of a junior mortgage who stands by while the sale is made and confirmed must be deemed to have waived any right thereafter to redeem (*Simmons* v. *Burlington, C. R. & N. Ry. Co.*, 159 U. S. 278). As to those whose interests in the property are cut off by the foreclosure, such a purchaser has no further obligation or duty after the actual delivery of the referee's deed. He may do with the property as he sees fit. He may convey it back to the original owner without thereby revesting liens which were cut off by the sale and conveyance in the foreclosure proceedings. If the foreclosure and sale were tainted with fraud as between the parties, the rule might be different, but, even then, account must be taken of intervening equities; as to any subsequent

*bona fide* purchaser the title still would not be subject to attack. In the case at bar there was no fraud affecting the foreclosure proceedings or the sale or the transfer by the purchaser to the Bornsteins, the foreclosure proceedings were regularly conducted and the conveyance made upon the sale was unconditional The mere fact, if it be a fact, that the original owner acquired title subsequent to the purchaser on the sale did not reinstate the second mortgage lien.

In cases where either an unconditional warranty of title or a covenant to protect the title of the second mortgagee against all incumbrances and liens, or a covenant to defend the title against the claims of others or to pay all taxes was contained in the second mortgage indenture or in the conveyance in which such incumbrances or liens were assumed, it has been held that, even without the intervention of fraud, the second mortgage would reattach as a lien on the property upon the previous owner who was also the maker of the second mortgage, or his nominee, *reacquiring the title upon the foreclosure sale*, upon the theory that the maker of such a mortgage is estopped to dispute the lien of the second mortgage. (*Otter* v. *Lord Vaux*, 6 De Gex, M. & G, 642; *Home Owners' Loan Corp.* v. *Guaranty Title Trust Co.*, 168 Tenn. 118; *Ayer* v. *Philadelphia & Boston Face Brick Co.*, 157 Mass. 57), or on the theory that the payment of the prior mortgage will be deemed a payment and extinguishment of the prior lien (*Hilton* v. *Bissell*, 1 Sandf. Ch. 407; *Van Horne* v. *Everson*, 13 Barb. 526), and to like effect where fraud tainting the foreclosure was involved (*Merchants Nat. Bank* v. *Miller*, 59 N. D. 273), even though such a covenant or warranty was not contained in the second mortgage (*Stiger* v. *Mahone*, 24 N. J. Eq. 426; *Chamberlain* v. *Forbes*, 126 Mich. 86; *Mendenhall* v. *Hall*, 134 U. S. 559; *McAlpine, Polk & Co.* v. *Zitzer*, 119 Ill. 273; *Tompkins* v. *Halstead*, 21 Wis. 118). The decisions in those cases are not controlling under the facts in this case. Where there was

no such contractual obligation on the owner (*Huzzey* v. *Heffernan*, 143 Mass. 232), or duty to protect the second mortgage against sale under antecedent liens (*Plum* v. *Studebaker Bros. Mfg. Co.*, 89 Mo. 162), the foreclosure of the first mortgage wiped out all claims on the second mortgage (*Hopkins* v. *Wolley*, 81 N. Y. 77, 84). There are other cases cited by appellant and otherwise found where a party will be estopped to deny his previous title if he had some duty to perform and fraudulently acts to cut off an existing right or interest of the one entitled to the recognition of such duty (illustrative of such cases is *Byrnes* v. *Owen*, 243 N. Y. 211), or seeks to cut off the rights of the holder of an unrecorded mortgage by a fraudulent discharge (*Clark* v. *McNeal*, 114 N. Y. 287).

In the instant case there was no duty arising under any contract, provision of law or consideration of equity which required the owner of the property to protect the second mortgage against foreclosure of the first mortgage. The second mortgage indenture, in express terms, made it subordinate to the lien of the first mortgage. The holder of the junior mortgage knew that it was, at all times, subject to the hazards of defaults of the mortgagor and of the foreclosure of the senior lien. His financial inability to meet those hazards placed no legal or equitable burden on the defendants requiring them to act differently than they did.

We conclude that title was finally free of the lien of the second mortgage upon the delivery to the purchaser of the referee's deed and that the lien of the second mortgage was not revived by the transfer of the property by the purchaser to Benjamin Bornstein and Rose Bornstein four or more months after the foreclosure sale.

The judgments below should be reversed and the complaint dismissed, with costs in all courts.

CRANE, Ch. J., O'BRIEN and LOUGHRAN, JJ., concur; FINCH, J., concurs in result; LEHMAN and HUBBS, JJ., taking no part.

Judgments reversed, etc.