FINDLEY v. TYLER.

5-1229                                    300 S. W. 2d 598

Opinion delivered April 8, 1957.

*Fietz* and *McAdams,* for appellant.

*Douglas Bradley,* for appellee.

MINOR W. MILLWEE, Associate Justice. This is a suit to partition 20 acres of land originally brought by appellee, Anna Tyler. The widow and four children of Lee Findley, deceased, other than Anna Tyler either intervened or were joined as party defendants along with the appellant, Vernon Findley. The chancellor found that appellees, Anna Tyler, Lucille Storey and William L. Findley each owned an undivided one-fifth interest in fee in the tract and partition was ordered. Vernon Findley, who procured a deed from the other two heirs of his deceased brother, Lee Findley, and a tax deed from the State, has appealed.

According to the proof adduced by appellees the 20 acres in controversy was a part of an 80-acre tract owned by T. L. Findley at the time of his death intestate in 1934. His four surviving adult sons exchanged deeds in 1935 under which each took title to 20 acres with the tract in controversy going to Lee Findley, the eldest son, and the appellant, Vernon Findley, receiving an adjoining 20 acres and with each making his home on his tract. The 80 acres remained undivided for general tax assessment purposes but Lee Findley paid drainage taxes on his 20 acres in January, 1936. Lee Findley died April 2, 1936, survived by his widow Naomi (now Naomi Lamberth), Anna Tyler, a daughter by a former marriage, and four children born to the marriage to Naomi whose names are Louise Daugherty, Lucille Storey, William L. Findley and James Lee Findley and who lived with the widow on the property when their father died. The youngest of the five children was 5 years old and the eldest 18 years old at that time. Shortly thereafter the widow and her four minor children moved off the land to the home of Naomi Findley's mother. Naomi married Quilly Lamberth in February 1937.

When Lee Findley died in 1936 appellant was the nearest neighbor and offered advice and assistance to the widow. Acting on his advice she paid an unsecured debt of $350.00 owed by her deceased husband for repairs to the homestead out of the proceeds of a small insurance policy on his life. When the widow and children moved off the land appellant agreed to take care of the place and look after it for them. The testimony relative to the possession and renting of the place for the years 1937, 1938 and 1939 is in dispute and understandably vague. Naomi Lamberth stoutly denied receiving any rents and stated she assumed that appellant was looking after renting of the place under his agreement to do so. While two witnesses stated they were tenants on the place about that time and paid a small rental to Quilly Lamberth one of them admitted that Naomi Lamberth then told him she had turned the place over to appellant. While appellant admitted telling Mrs. Lamberth he would look after the place and first stated that he had no recollection as to just when he started collecting rents, he later testified that he first collected the rents in the summer or fall of 1940 and had continued to do so since that time.

The taxes on the entire 80-acre tract were unpaid for the years 1935 to 1939. The land sold to the state for the 1935 taxes which became delinquent in October, 1936, and was certified to the State in 1939. On February 23, 1940, appellant paid $41.00 for a state deed to his 20-acre tract and the 20 acres in controversy. Naomi Lamberth later learned of the purchase by appellant who told her she had lost the place and she stated she would not have discharged the $350.00 debt owed by her deceased husband if she had known she was going to lose the property in that manner. Appellant then agreed to and did pay Mrs. Lamberth $350.00 at the rate of $10.00 per month, which payments she assumed came from the rents. In 1944 appellant secured a quitclaim deed to the 40 acres from the drainage district. In 1951 Anna Lee Tyler, the oldest child of Lee Findley, deceased, approached appellant about her interest in the land and he promised to pay her something. These promises

were subsequently repeated up to the time the instant suit was filed in 1955. Appellant then tried to secure from all the children of Lee Findley a deed which two of them signed but the three appellees declined to execute. There is no proof that appellant ever brought any adverse claim of ownership on his part directly to the attention of these appellees prior to institution of this suit.

In holding that each of the three appellees owned an undivided one-fifth interest in the 20 acres and ordering partition, the chancellor found: ''It is the considered opinion of this court that Vernon Findley was in permissive possession of this property and had been since his brother's death in 1936 and was supposedly protecting the interest of the widow and minor children when he purchased the State Deed in 1940. That Vernon Findley's purchase had the effect of an equitable redemption of the property for the benefit of the widow, Naomi Lamberth, and the heirs at law of Lee Findley — the four minor children of Naomi Lamberth and Anna Tyler.

''That Naomi Lamberth being an adult person in 1940 and having actual notice from Vernon Findley of his State Deed soon thereafter, and having delayed 16 years to assert a claim, is now barred by laches from dower and homestead. That none of the five children of Lee Findley had notice prior to the filing of this suit which would put the statute of limitations in motion, and did not abandon their homestead rights during minority. That Louise Daugherty and James L. Findley deeded their interest in these lands to Vernon Findley and have prayed for no relief in this action.''

Naomi Lamberth has not appealed. In urging a reversal appellant earnestly contends the evidence is not of that clear, cogent and convincing character required to establish a constructive or resulting trust in favor of the appellees. The pleadings did not present the issue of a resulting trust and the chancellor did not decide the case on that point. The gist of the decree is that the purchase of the land from the State by appellant

in 1940 while he was enjoying the rents and profits amounted to a redemption for the benefit of the widow and heirs of his deceased brother. It is well settled that one in possession of land enjoying the rents and profits cannot acquire title thereto by permitting it to sell for the taxes and buying it at the tax sale, or by purchasing from one who has purchased at such sale; and that such purchase will be regarded in equity as a mere redemption. *Guynn* v. *McCauley,* 32 Ark. 97; *Wade* v. *Goza,* 99 Ark. 543, 139 S. W. 639; *Galloway* v. *Battaglia,* 133 Ark. 441, 202 S. W. 836; *Roberts* v. *Miller,* 173 Ark. 38, 291 S. W. 814; *Zimmerman* v. *Franklin County Savings Bank & Trust Co.,* 194 Ark. 554, 108 S. W. 2d 1074; *Smith* v. *Smith,* 210 Ark. 251, 195 S. W. 2d 45. See also Jones, *Arkansas Titles,* Sec. 1299. Where a person bound to pay taxes on land permits a forfeiture, his subsequent purchase from the State will be treated as a redemption. If Naomi Lamberth had remained in possession of the homestead following her husband's death the duty would have rested upon her to keep down the taxes and she could not have acquired title to appellees' interest in the land by permitting a forfeiture and purchase from the State. If the testimony adduced by appellees is credible, the appellant stood in the same relation toward appellees as did the widow insofar as the 20 acres in controversy is concerned. The chancellor's findings to this effect, and that the possession of appellant was permissive and not adverse to appellees, are not against the preponderance of the evidence.

Affirmed.