ALEX HOLLAND, Respondent, v FULBERT, INC., et al., Defendants; MARINE MIDLAND BANK-EASTERN, NATIONAL ASSOCIATION, Appellant.

Third Department, July 24, 1975

*Martin, Noonan, Hislop, Troue & Shudt (Walter S. Wojcik* of counsel), for appellant.

*Oreste Vincent* for respondent.

REYNOLDS, J. This motion arose out of an action by the plaintiff Alex Holland to foreclose a mortgage. The appellant Marine Midland Bank-Eastern, National Association, Sanford E. Thompson and Jean F. Thompson and Fulbert, Inc., were named as defendants in this foreclosure action.

The facts are as follows:

Plaintiff, Alex Holland, owned the premises in question, which were at the time of his ownership under mortgage to Whitestone Inn, Inc. Plaintiff, Alex Holland, sold the premises to the defendants, Sanford E. Thompson and Jean F. Thomp-

son, on June 14, 1968 and, at the time of this sale, defendants Thompson assumed, in writing, the Whitestone mortgage, and defendants Thompson then gave a second purchase-money mortgage to the plaintiff. The defendants, Thompson, then defaulted on the senior Whitestone mortgage, and the Whitestone mortgage was brought to foreclosure, while the plaintiff's junior mortgage was still in full force. At the time of the foreclosure sale of the senior Whitestone mortgage (having been previously assigned to Anthony and Anna Mangino) the defendants Thompson were still the owners of the real property, and the defendant, Jean F. Thompson, bid the property in, in her name, and received a deed to the premises from the referee in foreclosure. Subsequent to the foreclosure and sale and the referee's deed to defendant, Jean F. Thompson, the defendant, Jean F. Thompson, conveyed the property to defendant, Fulbert, Inc., the present owner, and the defendant, Fulbert, Inc., mortgaged the premises to the appellant, Marine Midland Bank-Eastern, National Association.

The appellant, Marine Midland Bank-Eastern, National Association, moved to dismiss plaintiff's complaint in the action to foreclose his mortgage for failure to state a cause of action. Special Term denied this motion finding on the law and the facts that the plaintiff's mortgage remained a prior recorded lien as against all subsequent purchasers and mortgagees.

The issue is: can the owner of the equity of redemption who is personally obligated to pay the first mortgage and the second mortgage on his property, purchase the mortgaged property on the judicial sale held on the foreclosure of the first mortgage and thereby effectively eliminate the lien of the second mortgage?

It has apparently been the law for years that he cannot. All of the cases (which are not recent) have so held. The courts have held that fraud must be alleged and proven where the purchaser on foreclosure was not the owner of the property, but was in collusion with the owner to defraud the second mortgagee, but where the owner bids in at a mortgage foreclosure fraud is not a necessary element.

The leading case on this subject is *Dorff v Bornstein* (277 NY 236, 240–241) where the Court of Appeals said: "A *bona fide* purchaser *(other than the owner)* on an unconditional sale of real property pursuant to a regular foreclosure acquires a

clear and absolute title as against all parties to the suit and their privies which relates back to the date of the mortgage so as to cut off all intervening rights and equities". (Emphasis supplied.)

In this case the defendant, Jean Thompson, was the owner, and she therefore is not a bona fide purchaser under the *Dorff* rule. She did not acquire a title free and clear of the liens of record at the time of her purchase. *Dorff* goes on to say (p 242): "In cases where either an unconditional warranty of title or a covenant to protect the title of the second mortgagee against all encumbrances or liens, or a convenant to defend the title against the claims of others or to pay all taxes was contained in the second mortgage indenture or in the conveyance in which such encumbrances or liens were assumed, it has been held that, even without the intervention of fraud, the second mortgage would reattach as a lien on the property upon the previous owner who was also the maker of the second mortgage, or his nominee, *reacquiring the title upon the foreclosure sale,* upon the theory that the maker of such a mortgage is estopped to dispute the lien of the second mortgage [citations omitted] or on the theory that the payment of the prior mortgage will be deemed a payment and extinguishment of the prior lien". The second mortgage which is made a part of the complaint in the case at bar, at paragraphs "6" and "9", recites: "6. That the mortgagor will pay all taxes". "9. the mortgagor warrants the title to the premises."

Other significant holdings are: *Duer v Jaeger* (113 Misc 743, 745) where the court held that fraud was unnecessary, and stated: "It was only by taking title to the mortgaged premises and not by any overtures looking toward that end, that they consummated a revivor of the second mortgages." And at page 747, the court went on to say: "The owner of the equity of redemption when he purchases at a sale of foreclosure of a first mortgage restores the lien of a second mortgage which except for his purchase would be extinguished, and this is so, because to hold otherwise would make him guilty of a constructive fraud. He is thus acquitted of fraud by the law, and when he does the second mortgage the kindness of reviving his security albeit under the compulsion of the law, it is inconceivable that he has done any wrong. He is forced by equity into a place of honor and generosity." And at page 745, this court also acknowledged that the lien of the junior mortgagee attaches as a first mortgage immediately upon

transfer of the deed to the owner of the equity of redemption of the senior mortgage.

In *Hilton v Bissell* (1 Sandf. Ch. 407) the defendant purchased the subject property assuming the two outstanding mortgages, defaulted on the senior mortgage, and the senior mortgagee foreclosed. Defendant was the purchaser at the foreclosure sale, and the court held that defendant's purchase at the sale did not bar plaintiff's action to foreclose the junior mortgage. The court stated (pp 410–411):

"In effect, the defendant used the money which he was bound to apply to the payment and extinguishment of (the senior) mortgage, for the purpose of buying the land under that mortgage. And instead of leaving the premises subject to the complainant's mortgage as the first lien, which would have been the effect of an honest application of his money, the defendant claims that he has so applied it as to cut off entirely the lien of that mortgage. He has satisfied [the senior mortgagee], but in such a mode that he thereby annihilates the second mortgage. This is substantially the ground assumed by the [answer].

"Looking beyond the forms through which the defendant has effected this arrangement, it is a payment of [the senior] mortgage. He was bound by his covenant to make such payment. It was his duty to discharge that mortgage. This court cannot permit him so to perform that duty, as to defeat the whole benefit secured by the covenant to the parties for whose protection it was made. No one can take advantage of his own wrong. And equity, disregarding the forms of title which the defendant has managed to acquire, will consider him as the owner of the land subject to the complainant's mortgage, and discharged from the mortgage to [the senior mortgagee].

"The decree of foreclosure on the latter, would doubtless have been conclusive against the complainant in favor of a bona fide purchaser of the premises under it. But the defendant does not occupy that position, and the court cannot permit him to set up as a bar to the complainant's right, a foreclosure obtained by his own contrivance and breach of covenant.

"If he did not intend to do injustice, he should have bid enough to have paid both mortgages, or acknowledged his continuing liability on the mortgage in question."

*Van Horne v Everson* (13 Barb. 526) holds that the second mortgage was not eliminated when the mortgage property was purchased by the owner of the equity of redemption. The case

is cited with approval in *Dorff v Bornstein* (277 NY 236, *supra*). In both *Dorff (supra)* and *Kossoff v Wald* (272 NY 480), the purchasers at the sale held on the foreclosure of the first mortgages were the plaintiffs, the first mortgagees *and not the owners.* In the subsequent action brought by the second mortgagees, the second mortgagees alleged and attempted to prove collusion and fraud between the first mortgagees and the owner of the equity of redemption to show that the owner was really the purchaser at the sale. The actions failed because the second mortgagees failed to prove fraud and collusion between the first mortgagees and the owners. The second mortgagees attempted to prove that the first mortgagees had purchased the property by prior agreement with the owners as "dummies" for the owners of the equity of redemption.

Although the *Kossoff* and *Dorff* cases are not directly in point, they are obliquely in point. The two cases indirectly recognize that if there is collusion between the first mortgagee and the owner so that the purchase by the first mortgagee is not to protect his interest in a bona fide transaction, but is in reality and in fact a purchase by mortgagee as an alter ego of the owner, then the second mortgage is not eliminated. This indirectly recognizes that a purchase by the owner is a form of constructive fraud on the second mortgage (cf. *Wattawa v Stallforth,* 9 AD2d 586).

The dissent suggests the holder of the second mortgage has an adequate remedy on the bond, as he can sue on the bond and obtain judgment against the owner and establish a lien on the property. We suggest this remedy is illusory. The facts in the instant case so demonstrate. That a second mortgagee *might* have some other or additional remedy does not prevent him from relying on the law which has existed for years all over the country, that an owner of the equity of redemption in a first and second mortgage may not by purchase of the first mortgage at a foreclosure sale cut off the second mortgage which he has convenanted to protect; equity will not allow him to do so.

It is not necessary to reach the question of whether or not a bona fide purchaser from the owner-mortgagor takes title to the property free and clear of the lien of the junior mortgage. This question is not before the court. Whether or not the bank is a bona fide purchaser *without notice* is an affirmative defense which must be raised by an answer (CPLR 3018, subd [b]). The bank has not served an answer in this action. This

defense cannot be raised on a motion under CPLR 3211 to dismiss the complaint on the ground the pleading fails to state a cause of action. However, there is a serious question as to whether the bank can be a bona fide purchaser for value without notice, as the bank is charged with notice of all matter revealed by the record title.

The appellant cites Warren's Weed Law of Real Property (2A Warren's Weed, New York Real Property [4th ed], § 27.04) and relies on the following sentence therein: "It seems clear, however, as indicated in the case of *Kossoff v Wald* previously cited, that there must be conspiracy or collusion for the second mortgagee to take advantage of a forced sale brought about by the holder of a first mortgage. The mortgagor, even though amply able to keep the mortgage from default is not required to do this. He may deliberately refrain from making payments on the mortgage so that it will be foreclosed enabling him to repurchase at the foreclosure sale and wipe out subsequent liens." (The dissent sets forth a truncated part of the above.) Weed cites *Dorff (supra)* as authority for the statement, however, a mere reading of Weed and *Dorff (supra)* shows that Weed's writer is in obvious error and that *Dorff* cannot be so interpreted. It is significant that all leading authorities on the subject interpret the rule consistent with the decision at Special Term and contrary to Weed (see 59 CJS, Mortgages, § 523, p 854; 3 Rasch Real Property Law [1962 ed], § 2497, p 1923; 2 Wiltsie, Mortgage Foreclosure Including Law of Mortgages [5th ed], ch 835, p 1356).

In conclusion it is our view that the decision at Special Term should be affirmed, with costs.

LARKIN, J. (dissenting). We respectfully dissent.

The majority relies upon the statement by the Court of Appeals in *Dorff v Bornstein* (277 NY 236, 240–241) "a *bona fide* purchaser (other than the owner) on an unconditional sale of real property pursuant to a regular foreclosure acquires a clear and absolute title as against all parties to the suit". In *Dorff (supra)* the trial court found that the mortgagor, in collusion with his son and daughter, willfully defaulted in order to precipitate a foreclosure of the first mortgage and cut off the lien of the junior mortgage. A short time after the foreclosure sale title was conveyed by the purchaser to the son and daughter of the mortgagor. On such a set of facts, the holding in *Dorff (supra)* was that the junior mortgage was cut

off at the foreclosure and was not revived by the transfer of the property to the son and daughter of the original mortgagor. The court further held in *Dorff (supra)* that even if the foreclosure sale were tainted with fraud, account must be taken of intervening equities and that the title of a subsequent bona fide purchaser would not be subject to attack.

In an earlier case a second mortgagee brought an action alleging collusion and conspiracy by the mortgagor and others entered into for the express purpose of wiping out the second mortgage *(Kossoff v Wald,* 272 NY 480). In that case the mortgagor conceded that the purchaser on the foreclosure sale purchased and held title to the premises for the benefit of the original mortgagor. The Court of Appeals upheld Special Term's dismissal of the complaint.

Although other real property writers take different views, at least one recognized work has stated: "The mortgagor, even though amply able to keep the mortgage from default is not required to do this. He may deliberately refrain from making payments on the mortgage so that it will be foreclosed enabling him to repurchase at the foreclosure sale and wipe out subsequent liens" (2A Warren's Weed, New York Real Property [4th ed], § 27.04).

The very theory of mortgage financing would seem to support the fact that anyone, including the owner, could bid at the foreclosure sale. The security of the junior mortgagee is the value of the property and the second mortgagee may protect that security at the foreclosure sale. Even if the mortgagor were the successful bidder at the foreclosure sale, the result would be merely to wipe out the junior mortgagee's security in the property and free the property from all subsequent liens. The obligation of the mortgagor on the mortgage note or bond would still remain and, indeed, the very property purchased free and clear by the mortgagor on the foreclosure sale would be subject to the remedies available to the holder of the bond or note.

GREENBLOTT and SWEENEY, JJ., concur with REYNOLDS, J.; HERLIHY, P. J., and LARKIN, J., dissent and vote to reverse in an opinion by LARKIN, J.

Decision affirmed, with costs.