JOHN A. MELAHN, Appellant, v ROBERT F. M. HEARN, Also Known as R. M. HEARN, Respondent.

Second Department, March 21, 1983

APPEARANCES OF COUNSEL

*Gellert, Ehlers, Dietz & Marlow* (*Amanda T. Green* and *George D. Marlow* of counsel), for appellant.

*James V. Brands* (*Henry S. Goldman* of counsel), for respondent.

Mangano, J.

■■ The question presented on this appeal is whether the common-law doctrine of the delinquent purchaser, first applied in *Oliphant v Burns* (146 NY 218), is still viable in this State. The doctrine of the delinquent purchaser prevents the owner of real property from using his purchase of a tax title to cut off a mortgagee's lien after the mortgagee's period of redemption has expired. In our view, the language of subdivision 1 of section 1024 of the Real Property Tax Law leads to the conclusion that the question presented must be answered in the negative.

In June, 1973 defendant mortgaged certain real property owned by him to plaintiff's assignor. In August, 1977 defendant allegedly defaulted on his monthly mortgage payment, and likewise defaulted on all subsequent payments. Prior to this alleged mortgage default, defendant had failed to pay his county taxes for the year 1973. The Dutchess County Commissioner of Finance then sold the property for unpaid taxes to Dutchess County on January 7, 1975. On March 1, 1978 the property was conveyed to the county by tax deed, the property not having been redeemed from the tax sale and the statutory period of redemption having expired. Thereafter, at public auction, defendant purchased the same property from the county for a sum equal to the amount the county had invested in the property, together with the accrued interest and all other charges resulting from the tax sale. In September, 1980 defendant then conveyed the premises to a third party, whose deed was recorded on October 29, 1980.

This action to foreclose the mortgage was commenced by service of a summons and complaint on October 30, 1980 and issue was thereafter joined. By notice of motion dated January 5, 1981 plaintiff moved for summary judgment. Upon the whole record, Special Term denied the motion and granted summary judgment to defendant. The court concluded that plaintiff's assignor had the right to redeem the subject property from the tax sale anytime within 36 months of that sale (Real Property Tax Law, § 1024, subd 1), and that, absent such a timely redemption, the convey-

ance by tax deed vested in the tax title grantee an absolute estate in fee and extinguished the prior mortgage lien.

We agree with the holding of Special Term. Subdivisions 1 and 2 of section 1024 of the Real Property Tax Law provide as follows:

"§ 1024. Additional period for redemption in case of mortgaged land

"1. *The holder of any mortgage upon real property duly recorded at the time of the sale thereof for unpaid taxes may redeem such real property or any part thereof from such sale at any time after the sale and before the expiration of six months after the time of filing of the evidence of the giving of the notice pursuant to subdivision two of this section, or if the notice is not given or evidence of the giving thereof is not filed, then at any time within thirty-six months after the sale, and not thereafter, redeem the real property so sold,* or any part thereof from such sale. The redemption shall be made by filing with the county treasurer a written description of the mortgage, and by paying to him for the use of the purchaser, or those claiming under him, the same amount which such holder would be required to pay upon redemption of such real property if he were an occupant thereof. *In case of failure to redeem within the time herein specified, the sale and conveyance thereof shall become absolute and the mortgagee and all other persons claiming title by virtue of any mortgage barred from redemption forever.* The holder of such mortgage shall have a lien upon the real property so redeemed for the amount so paid with interest from the time of payment, in the same manner as if it had been included in the mortgage.

"2. *A purchaser, or any person claiming under him, receiving a conveyance from the county treasurer pursuant to section ten hundred eighteen of this chapter may, if the real property be mortgaged, for the purpose of reducing the period of redemption, give a written notice of such sale to the record holder of the mortgage requiring him to pay the amount necessary to redeem the lands within six months after the time of filing of evidence of the service of such notice with the county treasurer. Such notice must be given within one year from the expiration of the time to redeem.*

Such notice shall be given either personally or by mail in the manner required by law in respect to notices of non-acceptance or non-payment of notes or bills of exchange" (emphasis added).

In the case at bar the purchaser did not utilize the procedure outlined in subdivision 2 of section 1024 of the Real Property Tax Law to accelerate the mortgagee's redemption period and consequently, the mortgagee received the benefit of the longer 36-month redemption period contained in subdivision 1 of section 1024. However, when the mortgagee herein failed to redeem the subject premises within that 36-month period, he lost his mortgage interest by virtue of the express language of subdivision 1.

It is true that in *Oliphant v Burns,* (146 NY 218, *supra*), which is relied upon by the dissent, the Court of Appeals upheld the mortgagee's lien over the tax title asserted by a delinquent purchaser even though the period of redemption contained in the governing statute at that time, viz., one year (see L 1874, ch 610, § 6)[1] had expired.[2] Specifically, that statute provided, with respect to the length of the mortgagee's period of redemption after tax sale as well as the consequences resulting from the mortgagee's failure to redeem within that period, as follows (L 1874, ch 610, §§ 6, 7):

"§ 6. At any time within one year after the date of said sale the * * * mortgagee * * * may redeem the same * * * At the expiration of one year from the time of such sale, the purchaser * * * shall be entitled to a lease of such premises, provided no redemption thereof has been made * * * and if such land shall not be redeemed within such year, the supervisor * * * shall execute to the purchaser, his executors, administrators or assigns, a lease * * * of the lands and tenements so sold, for such term as the same shall have been sold, and such lease shall be presumptive evi-

---

**1.** Section 6 of chapter 610 of the Laws of 1874 was in turn amended by section 5 of chapter 193 of the Laws of 1877 in minor detail which was not relevant to the appeal in *Oliphant v Burns* (146 NY 218).

**2.** Although neither the redemption statute in effect at the time of *Oliphant v Burns* (*supra*) nor the fact that the period of redemption contained therein had expired are mentioned in the Court of Appeals decision in that case, we agree with the dissent that the holding of *Oliphant* must be read in that particular context.

dence that such tax was legally imposed, and of the regularity of all the proceedings and of the sale.

"§ 7 * * * and the occupant and all others interested shall be barred of all right and title to the premises".

However, a careful reading of that statute reveals that although it superficially resembles subdivision 1 of section 1024 of the Real Property Tax Law, it differs strikingly from subdivision 1 in two crucial areas: (1) as opposed to the one-year period of redemption contained in the older statute, subdivision 1 grants a redemption period to a mortgagee after a tax sale, ranging from one and one-half to three years, depending on whether and when the statutory notice set forth in subdivision 2 of section 1024 is given (Real Property Tax Law, § 1024, subds 1, 2; § 1010); and (2) subdivision 1 contains more specific and emphatic language than that utilized in the older statute regarding the consequences suffered by a mortgagee who fails to redeem within the specified period of redemption after a tax sale, viz., "In case of failure to redeem within the time herein specified, the sale and conveyance thereof shall become absolute and the mortgagee and all other persons claiming title by virtue of any mortgage barred from redemption forever." Nor were subdivisions 1 and 2 of section 1024 of the Real Property Tax Law applicable in the case of *Pines v Novick* (168 App Div 155), which is also cited by the dissent.

█ Thus, in enacting subdivision 1 of section 1024, the Legislature significantly extended the redemption period after a tax sale to a mortgagee in comparison with section 6 of chapter 610 of the Laws of 1874, and evinced by its words a clear mandate that finality should be afforded to tax sales no later than three years after the sale. Under these circumstances it seems clear that the Legislature did not intend to graft the common-law doctrine of the delinquent purchaser, as set forth in *Oliphant v Burns* (146 NY 218, *supra*) and *Pines v Novick* (*supra*), onto this statute. Rather, it appears to us that the language of section 1024 of the Real Property Tax Law is very plain in delineating the redemption rights of a mortgagee. It does so in simple and absolute terms by failing to even hint that any exception to its provisions exists and by expressing a clear intent

to set up a redemption procedure whose provisions apply even when the tax purchaser is the mortgagor-delinquent taxpayer.

The dissent additionally argues that a "further constituent" of the doctrine of the delinquent purchaser is the concept of estoppel. In the context of this case the dissent frames the concept of estoppel as follows: "The party seeking to extinguish a lien by the assertion of tax title may be estopped to do so because the title was obtained through a violation of that party's duty to act consistent with the mortgagee's interest in the property and because of the mortgagee's reliance on the fulfillment of the duty to pay taxes". The dissent is further of the view that only actual knowledge of a tax sale can "undercut the reliance aspects of the doctrine", and that since the record is silent on this issue, an issue of fact exists which must be resolved at trial.

■ We disagree with the concept of estoppel as formulated by the dissent in the factual context at bar. Defendant is arguing that the mortgagee failed to redeem his lien after the tax sale within the limitation period contained in subdivision 1 of section 1024 of the Real Property Tax Law. If we view the case in this light, it is clear that an essential element of a true estoppel is absent here. The rule that a party may be estopped from pleading a Statute of Limitations requires a showing that the opponent's failure to timely act was caused by his reliance on the other party's wrongful actions (see *Simcuski v Saeli,* 44 NY2d 442, 448-449). Where, as here, the limitation on a mortgagee's redemption period is part of a statutory scheme that includes adequate notice to the mortgagee of the tax sale and its ultimate consequences, viz., the mortgagee's loss of rights, then it cannot be said that the mortgagee's failure to act timely is due to the wrongdoing of the mortgagor, but rather it is due to the mortgagee's own unexplained fault.

The case of *Selzer v Baker* (295 NY 145) is illustrative of this distinction. That case involved former sections 134 and 137 of the Tax Law (L 1932, ch 335, §§ 3, 5). Under former section 137 of the Tax Law, an occupant of land sold at a tax sale was given three years from the date of sale to redeem (this 36-month period was carried over in subdivi-

sion 1 of section 1022 of the Real Property Tax Law) unless the purchaser at the tax sale accelerated the period of redemption pursuant to the notice provisions of former section 134 of the Tax Law. (The notice provisions of former section 134 were substantially similar to those presently contained in section 1022 of the Real Property Tax Law, the successor statute to former section 134 of the Tax Law, and subdivision 2 of section 1024.) Former section 137 of the Tax Law also provided: "In case of failure to redeem within the time herein specified, the sale and conveyance thereof shall become absolute and the occupant and all other persons barred forever."

In *Selzer* (*supra*), the occupant of the property failed to pay taxes and the land was sold to Baker on October 17, 1940. Baker received a tax deed on November 15, 1941. Title in Baker would have been complete on October 16, 1943, three years after the tax sale (see Tax Law, former § 137), had he taken no further steps. Instead, on April 7, 1943 he served a notice on the occupant, pursuant to former section 134 of the Tax Law, accelerating the redemption period. The notice specifically stated that the occupant had six months after "filing in said County Treasurer's Office the evidence of the service of this notice" to redeem (*Selzer v Baker, supra,* at p 147; Tax Law, former § 134). Evidence of service of the notice was filed in the county treasurer's office on May 6, 1943. Under the notice given by Baker, and the proof of service thereof filed on May 6, 1943, the occupant had until November 6, 1943 (i.e., six months thereafter) to redeem his property, which was 21 days more than three years after the date of sale. The notice served by Baker did not comply with former section 134 of the Tax Law since it was served more than two years after the tax sale and was not served in the proper manner, viz., personally or by leaving it at the dwelling house of the occupant. Thereafter, the estranged wife of the occupant purchased a quitclaim deed from Baker upon paying the sum due him under his tax sale purchase. At the time of delivery to her of the quitclaim deed and Baker's tax deed, there was attached to the latter a certificate indicating that proof of Baker's service of the notice had been filed in the county treasurer's office on

May 6, 1943. In August or September, 1943, the occupant went with the notice that he received from Baker to the county treasurer. The treasurer examined the records and advised the occupant that proof of service of the notice had been filed and that he had until November 6, 1943 to redeem. The occupant paid the county treasurer on October 26, 1943 the amount required to redeem and the county treasurer issued him a redemption certificate. In March, 1944 the occupant demanded that his estranged wife reconvey the property back to him. Upon her refusal, the occupant brought an action to have the tax deed to Baker and the quitclaim deed from Baker to his estranged wife declared void, and to have the record of them canceled.

In holding for the occupant, the Court of Appeals held that although the notice sent by Baker did not comply with former section 134 of the Tax Law, "it did result in a visit by plaintiff to the County Treasurer's office with such notice for the purpose of ascertaining the date of the filing of the affidavit of service and the consequent final payment date six months thereafter" (*Selzer v Baker, supra,* p 149). Since Baker by his acts had effectively represented that he was extending the redemption period to November 6, 1943, which was beyond the three-year outer limit provided for in former section 137 of the Tax Law, and the occupant had relied thereon, the Court of Appeals held that "Baker was estopped to insist that the statutory period of three years controlled rather than the date he fixed in his notice" (*Selzer v Baker, supra,* p 149).

The instant case is completely distinguishable from *Selzer (supra)* since the defendant herein made no representations extending the applicable limitation period. The parties to the instant dispute agree that the three-year Statute of Limitations is applicable. Accordingly, since plaintiff's attempt to redeem was made after the three-year limitation period had expired, it was properly rejected by Special Term.

Finally, it is argued by the dissent that the doctrine of the delinquent purchaser has kinship with the rule that prevents a mortgagor who defaults on a first mortgage and then reacquires title on the foreclosure sale from cutting off the lien of a second or subsequent mortgage. Suffice it to

say that this rule does not involve the subject of tax sales and the failure of a mortgagee to timely redeem thereafter, which is governed strictly by statute (Real Property Tax Law, § 1024, subd 1).

Accordingly, the order appealed from should be affirmed.

LAZER, J. (dissenting). The defendant in this case sought to free himself from plaintiff's mortgage by failing to pay his real estate taxes, letting the county acquire title to the property, and then acquiring the tax title from the county. After defendant's mortgage payments ceased, plaintiff commenced this foreclosure action but was faced with the affirmative defense that defendant was not a proper party to the action because the property previously had been "transferred" to the County of Dutchess. Plaintiff responded with a motion for summary judgment, alleging that the defense was a sham because the defendant repurchased the property from the county after a tax sale. Defendant opposed with the claim that all prior liens on the property had been extinguished by his tax title. Special Term granted summary judgment to the defendant. As my colleagues of the majority posit, resolution of this appeal turns upon whether the doctrine of the delinquent pur-·chaser remains viable in this State. Since I conclude that it does, I vote for reversal and the denial of summary judgment.

Under the general rule, a purchaser who acquires real property by tax deed after a tax sale takes title free from any prior liens (Real Property Tax Law, § 1024, subd 1; *Lee v Farone,* 261 App Div 674, affd 288 NY 517). Under the current New York statute, however, a lienholder (such as a mortgagee) may salvage or redeem his lien by paying the tax arrears plus interest, penalties and charges within 36 months after the tax sale (Real Property Tax Law, § 1024, subd 1; see, also, Real Property Tax Law, § 1022, subd 5) and the tax deed cannot be issued until the expiration of this period. But even apart from the lienholder's right to redeem, I believe that the rule that a valid tax deed clothes the grantee with a new and complete title does not preclude equitable principles from operating to defeat a property owner's effort to extinguish the lien by withholding

payment of taxes. What these equitable principles are and how far they extend is the current controversy.

In most jurisdictions, those obliged to pay taxes on real property cannot strengthen their titles by defaulting on the tax payments and then reacquiring title after a tax sale (see, e.g., *Mendenhall v Hall,* 134 US 559; *Oliphant v Burns,* 146 NY 218; *Pines v Novick,* 168 App Div 155; *Matter of Town of Brookhaven,* 78 Misc 2d 499; *Geddes Sav. & Loan Assn. v Malvasi,* 60 Misc 2d 1053; *Jefferson v Metropolitan Mtge. & Securities Co. of Alaska,* 503 P2d 1396 [Alaska]; *Findley v Tyler,* 227 Ark 663; *Garvey v Byram,* 18 Cal 2d 279; *Miller v First Nat. Bank of Englewood,* 164 Col 449; *Bryan v Knox,* 138 Fla 452; *Koch v Kiron State Bank,* 230 Iowa 206; *Moore v Kuljis,* 207 So 2d 604 [Miss]; *Barry, Inc. v BAF, Ltd.,* 3 NJ Super 355; *Northwestern Mut. Sav. & Loan Assn. v Hanson,* 72 ND 629; *Burnett v Cole,* 193 Okla 25; *McKinnon v Bradley,* 178 Ore 45; *Hadlock v Benjamin Drainage Dist.,* 89 Utah 94; see, also Ann., 134 ALR 289; 3 Cooley, Taxation [4th ed], § 1437; Osborne, Mortgages [2d ed], § 177; 5 Tiffany, Real Property [3d ed], § 1425; 85 CJS, Taxation, § 809). This fundamental proposition, sometimes denominated the doctrine of the delinquent purchaser (see *Matter of Town of Brookhaven, supra*), which I will generally refer to as "the doctrine", derives from the confluence of equitable considerations whose joinder creates a principle of sufficient strength to overcome the presumptive validity of a tax deed and the time limitations contained in the redemption statute. The doctrine rests in part on the ancient maxim that no man may take advantage of his own wrong (*Northwestern Mut. Sav. & Loan Assn. v Hanson, supra*), a concept "[d]eeply rooted in our jurisprudence" (*Glus v Brooklyn Eastern Term.,* 359 US 231, 232). Since "'[a] mortgagor is under obligation, from the nature of the mortgage contract, to preserve the property pledged for the purposes of the original security'" (*Barnard v Wilson,* 74 Cal 512, 517) equity regards the acts of a party who acquires title by defaulting on his obligations as fraudulent in nature (*Mendenhall v Hall, supra; Geddes Sav. & Loan Assn. v Malvasi, supra; Wheeler v Handy,* 123 Misc 775; 2 James, Mortgages, § 841; see, also, *Dorff v Bornstein,*

277 NY 236; *Byrnes v Owen,* 243 NY 211; *Holland v Fulbert, Inc.,* 49 AD2d 86). The doctrine's strength derives in part from public policy and the inequitable consequences which would flow if those who owe the duty of paying taxes were permitted to profit from their neglect of that duty (*Crofts v Johnson,* 6 Utah 2d 350; *Northwestern Mut. Sav. & Loan Assn. v Hanson, supra;* Ann., 134 ALR 289; Note, Disability of Mortgagee to Assert Unencumbered Tax Title Against Other Lienors, 46 Yale LJ 334). If the statutory mechanism for the collection of taxes is permitted to become a device for a defaulting mortgagor to defeat his obligations, the law would justly be chargeable with connivance in fraud and dishonesty (see 3 Cooley, Taxation [4th ed], § 1437).

A further constituent of the doctrine is estoppel, which provides relief to those who have been prejudiced by their reliance on the fraudulent acts or other misconduct of a party (see *Simcuski v Saeli,* 44 NY2d 442; *General Stencils v Chiappa,* 18 NY2d 125; *Triple Cities Constr. Co. v Maryland Cas. Co.,* 4 NY2d 443). When a defendant has, " 'by deception or any violation of duty towards plaintiff,' " cut off an existing right or interest held by the plaintiff, " 'he must be charged with having wrongfully obtained an advantage which the court will not allow him to hold' " (*Erbe v Lincoln Rochester Trust Co.,* 13 AD2d 211, 213, apps dsmd 11 NY2d 754), and he will be estopped from asserting his title acquired by fraudulent acts (see *Dorff v Bornstein,* 277 NY 236, 243, *supra; Byrnes v Owen,* 243 NY 211, *supra*). The party seeking to extinguish a lien by the assertion of tax title may be estopped to do so because the title was obtained through a violation of that party's duty to act consistent with the mortgagee's interest in the property and because of the mortgagee's reliance on the fulfillment of the duty to pay taxes (see *Barnard v Wilson,* 74 Cal 512; *Burnett v Cole,* 193 Okla 25, *supra; Interstate Bldg. & Loan Assn. v Waters,* 50 SC 459; Osborne, Mortgages [2d ed], § 177).

The doctrine has a venerable origin in New York where it was first applied in *Oliphant v Burns* (146 NY 218, *supra*) to prevent the owners of real property from using their purchases of tax titles to cut off the interests of a

mortgagee after the period of redemption had ended. Under the tax act then applicable in Westchester County, the mortgagee had one year after the tax sale to redeem the property (see L 1874, ch 610, § 6, amd by L 1877, ch 193, § 5). The appellate record in *Oliphant* reveals that the property was not redeemed by the mortgagee and that under the tax statute even the municipality could not acquire tax title until after the expiration of the one-year period of redemption (Court of Appeals Cases, vol 1271, April-May 1895, pp 87-89). Notice of the tax sale was published in a local newspaper and posted in public places (L 1874, ch 610, § 4 as amd by L 1877, ch 193, § 4). When the *Oliphant* mortgagee commenced a foreclosure action against the defendants seven months after they had acquired tax titles from the municipality, she was confronted with the claim that those titles were paramount to her mortgages. She responded that the purchasers were estopped from relying on the tax titles to defeat the foreclosure.

Despite the *Oliphant* defendants' contention that their titles under the tax sale were complete, since the period for redemption had expired (Court of Appeals Cases, vol 1271, April-May 1895, Resp Brief, p 25), the Court of Appeals concluded that the defendants were "not in a position to obtain a tax title to the same property" (146 NY, at p 239). The defendants were thus precluded from asserting tax titles to defeat the mortgages (146 NY, at pp 241, 245), even though the mortgagee's right to redeem had expired when she commenced foreclosure.

*Oliphant* was followed by *Pines v Novick* (168 App Div 155, *supra*), where the property owner purchased a tax lien and attempted to extinguish the mortgage on his property by foreclosing the tax lien. This court held that (p 157) "[t]he mortgagor or his grantee cannot, by payment of taxes * * * acquire in the mortgaged premises any right, title or interest hostile to the mortgagee" (see, also, *Matter of Town of Brookhaven,* 78 Misc 2d 499, *supra; Geddes Sav. & Loan Assn. v Malvasi,* 60 Misc 2d 1053, *supra; Wheeler v Handy,* 123 Misc 775, *supra*).

The doctrine of the delinquent purchaser has kinship with the rule that prevents a mortgagor who defaults on a

first mortgage and then reacquires title on the foreclosure sale from cutting off the lien of a second or subsequent mortgagee (see, generally, Osborne, Mortgages [2d ed], § 177; Wood & Oberreich, Revival of a Second or Subsequent Mortgage, Upon Reacquisition of Title by the Original Mortgagor, after Foreclosure of a First Mortgage, 11 Ind LJ 429; White, Revival of Mortgages, 10 U of Cin L Rev 217). Thus, if the second mortgage contains a warranty of title or a covenant to protect the title against encumbrances, the mortgagor cannot cut off the rights of subsequent mortgagees by acquiring a new title through a foreclosure sale of the first mortgage (see *Dorff v Bornstein,* 277 NY 236, *supra;* see, also, *Holland v Fulbert, Inc.,* 49 AD2d 86, *supra; Duer v Jaeger,* 113 Misc 743; *Hilton v Bissell,* 1 Sandf Ch 407). The result is reached "upon the theory that the maker of such a mortgage is estopped to dispute the lien of the second mortgage * * * or on the theory that the payment of the prior mortgage will be deemed a payment and extinguishment of the prior lien" (*Dorff v Bornstein, supra,* p 242; see, also, *Byrnes v Owen,* 243 NY 211, *supra*).

The doctrine may not be evaded by the device of having a third party purchase at the tax sale and then convey to the mortgagor, since the law will not allow that to be done indirectly which cannot legally be accomplished directly (see *Jefferson v Metropolitan Mtge. & Securities Co. of Alaska,* 503 P2d 1396, *supra; Holliday v Phillips Petroleum Co.,* 275 F Supp 686 [ED Ark]; *Findley v Tyler,* 227 Ark 663, *supra; Whelchel v Solomon,* 180 So 2d 642 [Miss]; *Monroe v Gemeiner,* 45 Ohio Op 504; Ann., 134 ALR 289, 302; 72 Am Jur 2d, State and Local Taxation, § 941). The purchase of the property may be regarded as the mere payment of the delinquent taxes, leaving the delinquent purchaser with the same title as he held before the tax sale (see *Garvey v Byram,* 18 Cal 2d 279, *supra; McKinnon v Bradley,* 178 Ore 45, *supra;* see, also, *Dorff v Bornstein, supra*). The objectives of the statutory scheme — affording municipalities a practical means to collect delinquent taxes by the sale and delivery of marketable titles (see *R. M. Investors Corp. v Maggi,* 104 Misc 2d 41; 2 Rasch, Real Property Law & Practice, § 1983) — are not dimin-

ished by the doctrine, for it merely adjusts the relative equities between the wrongdoer and the innocent lienholder.

The majority's response to this analysis is quite simple: *Oliphant v Burns (supra)* has lost its significance because the one-year redemption period in that case has been increased to three and section 1024 of the Real Property Tax Law uses "more specific and emphatic" language in barring redemption after that time. My disagreement with this explanation springs primarily from the fact that it is not the length of the redemption period but rather society's refusal to reward wrongdoing that supplies the rationale for the doctrine. Furthermore, however "emphatic" the "specific" word "absolute" may be in section 1024, it is overcome by the estoppel aspects of the doctrine.

The length of the redemption period was given no significance either in *Oliphant* or the numerous other cases cited in this opinion, and our sister jurisdictions have had no difficulty in applying the doctrine after the expiration of periods in excess of one year (see, e.g., *Dinkelman v Harrison,* 61 Cal App 2d 258 [California Irrigation District Act, § 47 (three years)]; *Adams v Sims,* 177 Ark 652 [Ark Stats Ann, § 76-1218 (two years)]; *Hughes v Shaner,* 128 Fla 183 [Fla Comp Gen Laws, § 1003 (two years)]). I can perceive no reason why wrongdoers whose default in tax payments covers a short period should be subjected to the doctrine while those whose default is lengthier and greater should escape its effects.

As to the "specific and emphatic" language question, the Legislature certainly has never indicated any express intention to extinguish estoppel in tax title cases, and despite my colleagues' focus on the word "absolute" in section 1024, I see no significant differences in verbiage between the *Oliphant* tax statute and the current one. Both laws provide that at the expiration of the redemption period a tax sale purchaser is entitled to receive a tax title which cuts off all prior liens (compare Real Property Tax Law, § 1024, subd 1, with L 1874, ch 610, §§ 6, 7, 25; see, also, *Cromwell v MacLean,* 123 NY 474, 485). Although the *Oliphant* statute did not contain the word "absolute", it sought to accomplish the same result by declaring that

"the occupant and all others interested shall be barred of all right and title to the premises" (L 1874, ch 610, § 7).

The question, then, is not whether one Legislature used the word "absolute" and another did not, but whether a doctrine founded on public policy and containing a strong strain of estoppel, can prevent a misbehaving party from invoking the benefits of a statute even if it is absolute on its face. An estoppel, when properly applied, can cut off a right or privilege conferred by rule of law, by statute, or even by the Constitution (*Selzer v Baker,* 295 NY 145, *supra; Sentenis v Ladew,* 140 NY 463), for "estoppel has a power of mastery over all other rules, and is entitled to the distinction of being one of the greatest instrumentalities to promote the ends of justice" (*Ex Parte City of Bessemer,* 240 Ala 52, 56-57; see, also, *Johnson v Neel,* 123 Col 377; *City of Chetopa v Board of County Comrs. of County of Labette,* 156 Kan 290; *Union Bank of Milwaukee v Commercial Securities Co.,* 163 Wis 470). Indeed, claims long barred by the Statute of Limitations have been recognized as valid because the defendant was estopped by his wrongful conduct from pleading the statute (see *Simcuski v Saeli,* 44 NY2d 442, *supra; General Stencils v Chiappa,* 18 NY2d 125, *supra; Arbutina v Bahuleyan,* 75 AD2d 84; *Erbe v Lincoln Rochester Trust Co.,* 13 AD2d 211, *supra;* see, also, Ann., 43 ALR3d 429), notwithstanding the fact that courts are powerless to extend Statutes of Limitation (see CPLR 201).

Estoppel has been invoked to override the provisions of the civil usury law (see *Union Dime Sav. Inst. of City of N. Y. v Wilmot,* 94 NY 220; *Bennis v Thomas,* 14 AD2d 895), the Statute of Frauds (see *Imperator Realty Co. v Tull,* 228 NY 447; *Smith & Co. v USLife Corp.,* 554 F2d 34), and even to preclude the finality of tax titles when warranted by the circumstances (see *Selzer v Baker,* 295 NY 147, *supra; Williams v Saddlemire,* 270 App Div 963). In *Selzer,* estoppel prevented the tax sale purchaser from asserting his rights under former section 137 of the Tax Law (L 1932, ch 335, § 5) which provided: "In case of failure to redeem within the time herein specified, the sale and conveyance thereof shall become *absolute* and the occupant and all other persons barred forever" (emphasis supplied). Despite my colleagues' elaborate effort to distinguish the

facts in *Selzer,* if estoppel in that case was not defeated by use of the term "absolute" in former section 137 of the Tax Law, I see no reason why it should be defeated by similar terminology in section 1024 of the Real Property Tax Law.

Having concluded that the doctrine of the delinquent purchaser is alive and well in New York, I believe that its application in any specific case is dependent on the lienholder's lack of knowledge of the property owner's tax defaults. Since fraud lies at the root of the doctrine (see *Mendenhall v Hall,* 134 US 554, *supra;* 2 James, Mortgages, § 841; see, also, *Dorff v Bornstein,* 277 NY 236, *supra; Byrnes v Owen,* 243 NY 211, *supra*) and reliance is a necessary element to proof of fraud (see *Channel Master Corp. v Aluminum Ltd. Sales,* 4 NY2d 403; *Roney v Janis,* 77 AD2d 555) and to estoppel (see *Simcuski v Saeli,* 44 NY2d 442, *supra; Triple Cities Constr. Co. v Maryland Cas. Co.,* 4 NY2d 443, *supra*), a lienholder who has actual knowledge of the nonpayment of real estate taxes and who sits on his rights may not be in a position to invoke the benefits of the delinquent purchaser doctrine. The doctrine is not defeated, of course, by notice by publication, as is well indicated by *Oliphant (supra)* and the multitude of foreign cases. Quite obviously, the doctrine cannot coexist with the theory that it is overcome by publication notice, a basic feature of realty tax collection schemes involving tax sales. Actual notice that tax obligations are in default and that the property may be sold because of that default is another matter, however, for such knowledge may undercut the reliance aspects of the doctrine. Whether there was actual knowledge in this case is absolutely unmentioned in the record before us and it leaves a fact issue that should be resolved at trial.

Finally, there is the matter of the effect of defendant's conveyance of the property to a third party after he reacquired it. On September 24, 1980, the defendant conveyed to Karl Oster, who is not a party to this action, but the deed was not recorded until October 29, 1980. In the interim, plaintiff filed a notice of pendency on September 30, 1980 and served a summons and complaint on October 30, 1980, thus commencing the action within the 30-day limitation set by CPLR 6512. Nevertheless, defendant argues that

Oster is a necessary party to the foreclosure action. The law is to the contrary however — a grantee of mortgaged premises whose deed is not recorded until after the filing of the notice of pendency need not be made a party to a foreclosure (*Kindberg v Freeman,* 39 Hun 466, affd 109 NY 653; 14 Carmody-Wait 2d, NY Prac, § 92:121) because the notice of pendency is constructive notice to the grantee who is then bound by all proceedings taken in the action to the same extent as if he were a party (CPLR 6501; *Westchester Fed. Sav. & Loan Assn. v H.E.W. Constr. Corp.,* 29 AD2d 670). Since a judgment of foreclosure and sale forecloses all parties to the action and those claiming under them after the filing of the *lis pendens* in the action (RPAPL 1353, subd 3; *Dulberg v Ebenhart,* 68 AD2d 323; 14 Carmody-Wait 2d, NY Prac, § 92:89), Oster is not a necessary party.

Accordingly, I dissent and vote to reverse the grant of summary judgment to the defendant, but since there is a fact issue as to plaintiff's actual knowledge, summary judgment should be denied to both parties.

DAMIANI, J. P., and GIBBONS, J., concur with MANGANO, J.; LAZER, J., dissents and votes to reverse the order and deny summary judgment, with an opinion.

Order of the Supreme Court, Dutchess County, dated June 4, 1981, affirmed, without costs or disbursements.